Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax  (775) 786-9658
mark@markmausertlaw.com
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF NEVADA

CHELSEA LONG,                                              Case No.:

        Plaintiff,

        vs.                                        **COMPLAINT AND JURY DEMAND**

DIAMOND DOLLS OF NEVADA, LLC,
dba SPICE HOUSE, JAMY KESHMIRI,
KAMY KESHMIRI, CLIFTON KYLE
SMITH and  DOES I-X,

        Defendants

_____/

      COMES NOW plaintiff, through counsel, and hereby complains of defendants as

follows:

<u>Jurisdiction, Venue & Jury Demand</u>

      1.  Plaintiff is a woman, who is a resident of northern Nevada and who worked for

defendant Diamond Dolls of Nevada, LLC (hereinafter "Spice House") in the capacity of a

bartender.  All, or almost all, acts, statements and omissions herein alleged occurred in

northern Nevada, where plaintiff was employed by defendant.   Plaintiff has obtained a Notice

of Right to Sue from the Equal Employment Opportunity Commission, dated October 2, 2019.

This Notice is attached hereto and incorporated in this Complaint and Jury Demand. This

Complaint and Jury Demand is timely filed in accord therewith.   Plaintiff hereby requests a jury trial relative to all issues so triable.

2.  Defendant Diamond Dolls of Nevada, LLC, dba Spice House, is a limited liability company, corporation, limited partnership, partnership, or some other legal entity which previously employed plaintiff in northern Nevada.  At all times herein mentioned defendant had at least fifteen full-time employees working at least twenty weeks per year.

3.  Jamy Keshmiri and Kamy Keshmiri are brothers and own and operate defendant Diamond Dolls of Nevada, LLC.   The Keshmiri brothers, on information and belief, routinely engage in criminal activities on the premises of the Spice House, and oversee, direct, acquiesce to and profit from criminal activities engaged in on the premises of the Spice House and perpetrated by Diamond Dolls of Nevada's employees.  That is, for example, they oversee, manage, direct and profit from soliciting women to engage in prostitution, providing alcohol to underage women to facilitate solicitations for prostitution and arrange for prostitution transactions between customers and dancers who work at the Spice House.  New female dancers – especially very young women – are routinely told at orientation part and parcel of their jobs will entail leaving the premises of the Spice House with male patrons, for the purpose of engaging in prostitution.  The Keshmiris carefully cultivate good relations between themselves and various local government officials and employees – who have been allowed to frequent the Spice House and leave the Spice House in the company of female dancers, for the purpose of being provided special treatment at the Spice House, and engaging in sexual activities with female dancers, on and off premises.  Because Jamy Keshmiri and Kamy Keshmiri routinely use the Spice House to facilitate criminal activities, from which they personally profit, they are not entitled to the protection of the form of a limited liability company, or any other corporate or company form.  They are estopped from using the limited liability company as a shield to personal liability – especially since the harm plaintiff sustained

was directly and integrally related to the criminal activities from which the Keshmiris routinely profit.  That is, because of the Keshmiris' personal involvement in decisions regarding illegal activities, such as cajoling women to engage in prostitution; providing alcohol to underage women so as to encourage them to engage in prostitution; conspiring to arrange for prostitution transactions; etc., they are to be deemed the employer of plaintiff and therefore personally liable.  Likewise, they are personally liable for the common law torts stated herein, both because of negligence and because they implicitly ratified defendant Smith's conduct. Ratification occurred by the statements, actions and inaction of Jamy Keshmiri and Kamy Keshmiri and via the statements, actions and inactions of their employees, including their General Manager, Mr. Hoffman.

4.  Defendant Clifton Kyle Smith is an individual who, at various times, has been employed by defendants.  Defendant Smith was ostensibly employed as a bartender.  However, a substantial part of Smith's duties entailed cajoling and convincing young women to engage in prostitution.  For example, while convincing young women to engage in prostitution, Smith plied them with copious amounts of alcohol, usually in the form of shots, which was provided by the Spice House with the knowledge of its General Manager and with the knowledge of the Keshmiris.  Spice liaisoned with male patrons and then convinced various women to leave the premises with them for prostitution purposes.   Smith often controlled and handled the financial transactions, and turned the resultant money, usually in the form of cash, over to the Spice House.  Smith was routinely integrally involved in ensuring the Spice House, i.e., the Keshmiri brothers, received the "buy out" fee, i.e., the Keshmiris' cut of whatever fee a male patron paid for having sex with a dancer. Smith also received a portion the monies male patrons paid for prostitution.

5.  Doe defendants are corporations, limited liability companies, partnerships, individuals or some other legal entities which are in some way responsible for plaintiff's

injuries or damages. When plaintiff ascertains the identities of these entities, she will seek leave of Court so as to add them to this Complaint and Jury Demand.

6. This Court has subject matter jurisdiction over this case per 28 U.S.C. 1343. The Court has subject matter jurisdiction because plaintiff is a woman who is alleging she was subject to a hostile work environment "because of sex", in violation of 42 U.S.C. 2000e, et seq. Plaintiff was subject to retaliation because she opposed sexual harassment, i.e., plaintiff was constructively and wrongfully discharged. This Court has supplemental jurisdiction over the common law torts alleged herein pursuant to 28 U.S.C. 1367.

7. This Court has venue re this action pursuant to 42 U.S.C. 2000e-5(f)(3) because all, or almost all of the actions, statements and omissions which form the basis for this lawsuit occurred in northern Nevada, i.e., in the geographical area of this judicial District.

First Cause of Action

(Sexual Harassment)

8. Plaintiff hereby incorporates the allegations of paragraphs 1 through 7, inclusive, as well as the allegations of all other paragraphs herein, as though the same had been fully stated. Defendant Smith is not named in this cause of action.

9. Plaintiff commenced working for defendant in approximately May, 2015 and worked primarily at the Spice House. Plaintiff also worked at the Wild Orchid – another bar/cabaret, i.e., strip club, also owned and operated by the owners of the Spice House – brothers Jamy and Kamy Keshmiri. Plaintiff was constructively and wrongfully discharged from defendants' employ on or about March 20, 2019. The Spice House, Jamy Keshmiri and Kamy Keshmiri, i.e., the defendants, prior to 2019, had a history of using the Spice House to facilitate prostitution, and to profit from prostitution. See, redacted Declaration of former Spice House General Manager Kenneth McPartlin (that Declaration has been redacted as a courtesy to an individual named therein who alleges she was raped at the Spice House).

Page 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    10.  In June or July of 2018, plaintiff was sexually battered by a Spice House employee, Clifton Kyle Smith.  Smith approached plaintiff as she was sleeping in a VIP room.  Without her consent he grabbed her pants and panties and pulled them down around her legs.  Smith stood over plaintiff (who was terrified and pretended to continue to sleep), and masturbated to the point of ejaculation.  Mr. Smith was employed, in part, as a disc jockey by defendant. However, upon information and belief,  Smith had other duties.  Smith served as a liaison between male customers and female dancers, i.e., he routinely set up sexual encounters, off-site and sometimes on-site, between dancers and customers. That is, Smith arranged for prostitution transactions.  Defendant profited from these transactions by routinely charging "buy out" fees – between $100 to $500 each time a dancer left her shift, to go off-premises with a customer for the purpose of engaging in prostitution.  Defendant Smith also usually received a  fee for setting up such liaisons.  The dancer received the remainder of the monies per each transaction. The "buy out" fee was, in fact, the defendants' cut or percentage of each prostitution transaction.  Upon information, Smith, with the knowledge of the individual defendants, routinely arranged for such prostitution transactions, including relative to women as young as eighteen.  Smith, pursuant to arranging for these transactions, regularly provided alcohol (usually shots) to dancers, including dancers aged 18, 19 & 20. Smith was adept at convincing women to engage in prostitution; arranging prostitution liaisons with customers, including payment for prostitution services; and ensuring the other defendants financially profited from prostitution.  Because Smith was so adept at these aspects of his job, he was regarded as a very valuable employee, i.e., Smith was able to make himself, and the defendants, large amounts of money on a regular basis.  Plaintiff was aware of Smith's activities and understood why Smith was regarded as a valuable employee.  Plaintiff was offended by defendants' practice of causing young women to become intoxicated and pressuring them into becoming prostitutes. Plaintiff personally witnessed Smith recruit young women to be prostitutes, i.e., she heard him

explain to new dancers if a player wanted to leave with a dancer, the dancer was to contact the Floor Host, who would negotiate the price with the customer, and that a percentage of the price would go to the Spice House.  Plaintiff subsequently watched customers pay to leave with dancers, usually by cash, but sometimes via credit cards.  Plaintiff also witnessed General Manager Hoffman divide the monies the Spice House obtained thereby, and watched Smith be paid a portion of those monies for effecting the prostitution liaison between dancers and male patrons.  Plaintiff witnessed Smith provide shots to young dancers, and after he succeeded in getting them intoxicated, walk them over to a VIP customer, who would then leave the premises with them.  Sometimes these young woman were underage, i.e., they were not of legal drinking age.  Plaintiff was offended by these practices.

11.  Immediately after Smith battered and assaulted Ms. Long she informed a co-employee, Julie Ramos (who had been sexually harassed by Smith), of Smith's activities. Shortly thereafter plaintiff informed the defendants' attorney, who upon information and belief, informed the Keshmiri brothers.   Plaintiff also promptly complained to the Spice House General Manager, Mr. Hoffman.. The defendants believed plaintiff. For instance, defendants undertook no effort to gather evidence, e.g., to collect a sample of Smith's semen, which was left on the floor of the VIP room.  Smith's employment was (at least ostensibly) terminated for approximately four or five months.  However, defendants allowed Smith to return to the Spice House premises, which he did, during this four or five month period.  After Smith sexually and battered and assaulted Ms. Long his mere presence became offensive and threatening to plaintiff. A reasonable hypothetical woman would have likewise found Smith's mere presence to constitute a sexually hostile work environment, as plaintiff Long did.

12.  Defendants, despite being informed Ms. Long had been subject to a sexual battery and an assault, per conduct which, as described by Ms. Long constituted an Open and Gross Lewdness, failed to inform police authorities of Smith's conduct.  Defendants were also aware

Smith had sexually harassed another employee, Ms. Julie Ramos.  See, the redacted Declaration of Ms. Ramos, attached hereto and incorporated herein.  The Spice House General Manager actively and successfully discouraged plaintiff from reporting Smith's conduct to law enforcement authorities.  General Manager Hoffman told plaintiff it was "not a good idea" to inform police authorities, or words to that direct effect.

13.  Approximately four or five months after Smith committed an Open and Gross Lewdness on the Spice House premises, defendants rehired Smith and thereupon informed plaintiff she had to work with Smith on a daily basis. Smith subsequently compounded his conduct by telling plaintiff he regarded the encounter as a "mutual situation" and he thought plaintiff had consented to his conduct.  Smith would often stay on the premises after his shift was over and drink.  Plaintiff, who was working as a bartender, was forced to serve drinks to Smith, i.e., to interact face-to-face, on a frequent basis.  Plaintiff, after being battered and assaulted by Smith, was fearful of Smith and regarded his mere presence as constituting a sexually hostile work environment.  That is, plaintiff did not know where Smith's boundaries were, e.g., whether they included a propensity and willingness to commit a sexual assault.  If the allegations of the female customer, who alleges she was sexually assaulted on March 15, 2019, are accurate, plaintiff's apprehension was accurate.  A reasonable woman, similarly situated, would have regarded Smith's mere presence in the work environment as constitution a sexually hostile work environment.

14.  Plaintiff was present on March 15, 2019, when a woman she knew visited the Spice House with her husband.  Plaintiff served this woman a large amount of alcohol, which she ingested.  Plaintiff observed this woman exit the women's bathroom almost immediately after Smith did and was informed by the woman, who was intoxicated, she had sex with Smith in the women's room. Plaintiff became aware the woman was alleging Smith raped her, i.e., she made statements accusing Smith of rape in plaintiff's presence.  Plaintiff knew the woman was

intoxicated because she had served her a substantial amount of hard liquor and was able to observe her demeanor.  Plaintiff knew this woman probably lacked capacity to consent to sexual intercourse and became aware the woman was alleging the sexual encounter was not consensual.  That night, while still working, plaintiff heard Smith state, "I didn't touch her.  I didn't rape that woman.  I can't go to jail."  General Manager Hoffman responded, "don't worry man, I got your back.  I'll make sure you don't go to jail."  Plaintiff heard this exchange and was offended thereby.

15.  In the early morning hours of March 16, 2019, while plaintiff was working the same shift, she informed General Manager Hoffman she was very uncomfortable with what had just happened, i.e., with the interaction between Smith and the woman who alleged she was raped by Smith.  General Manager Hoffman cut plaintiff off.  He told plaintiff he did not believe the woman was raped and he intended to lie to the police and thereby state he was in the bathroom with Mr.  Smith and the woman, and nothing happened.

16.  Plaintiff and Ms. Ramos scheduled a meeting with defendant Jamy Keshmiri about the alleged rape, i.e., for the purpose of objecting to the continued presence of Smith in the Spice House workplace.  When General Manager Hoffman learned of the scheduled meeting he responded by texting Ms. Ramos and thereby informed Ms. Ramos everyone, i.e., Ms. Ramos and Ms. Long, were fired.

17.  On March 20, 2019, Ms. Long and Ms. Ramos attended a meeting, at which Manager Hoffman and defendant Jamy Keshmiri attended.  At this meeting Jamy Keshmiri focused on Ms. Long and Ms. Ramos and harshly criticized them.  Defendant Jamy Keshmiri threatened the employment of both women via threatening to close the Spice House.  Defendant Jamy Keshmiri did not offer to curtail prostitution on the Spice House premises.

18.  In response to the sexually hostile work environment, created and maintained by defendants, plaintiff Long resigned her employment on or about March 20, 2019, as did Julie

Ramos.  Plaintiff was constructively and wrongfully discharged from the employ of the Spice House.  A hypothetical reasonable woman in plaintiff's position, knowing what plaintiff knew, would have likewise resigned.  For instance, plaintiff was fearful Smith would be allowed back on the premises of the Spice House, and would be re-hired.  Plaintiff's fear was reasonable, i.e., a hypothetical reasonable woman would have harbored the same apprehension based on defendants' (1) history of rehiring Smith; (2) defendants' history of discouraging reports of Smith's criminal activity, perpetrated on the Spice House premises;  (3) General Manager Hoffman's immediate reaction which consisted of failing to conduct an adequate inquiry as to whether Smith committed a sexual assault, while immediately manifesting a willingness to lie so as to exculpate Smith; (4) the financial utility of Smith to the defendants, i.e., the fact that Smith was very adept at cajoling and pressuring women to engage in prostitution; (5) Smith's ability to harm the defendants because of his extensive knowledge of the criminal activities the defendants have financially profited from for years; (6) General Manager Hoffman's attempt to fire plaintiff and Ms. Ramos; and (7) the hostile and inappropriate statements made by Jamy Keshmiri at the March 20, 2019, meeting.

19.  On or about May 24, 2019, General Manager Hoffman compounded the hostility plaintiff experienced by sending plaintiff a text message.  He thereby threatened to "press charges" against plaintiff; informed plaintiff of the identity of his attorney; and stated an intent to sue plaintiff – in response to learning plaintiff had filed an Intake Form with the Nevada Equal Rights Commission, or otherwise having manifested an intent to invoke her legal rights against the Spice House.

20.  As a direct proximate result of being subject to a sexually hostile work environment plaintiff suffered emotional distress, fear, apprehension, loss of enjoyment of life, recurrent negative memories, and nightmares.  It has been necessary for plaintiff to incur costs and retain counsel in order to vindicate her federally protected right to a workplace free of

sexual hostility.

## Second Cause of Action

### (Retaliation)

21.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 20, inclusive, as well as those of all other paragraphs herein, as though the same were fully stated herein. Defendant Smith is not named in this cause of action.

22.  Plaintiff was constructively and wrongfully discharged.  A constructive discharge is a form of retaliation.

23.  As a direct and proximate result of being subject to retaliation, plaintiff has been injured and damaged as described herein.  Further, plaintiff has suffered economic damage, i.e., lost wages, tips and benefits.  It has been necessary for plaintiff to incur costs and hire counsel in order to attempt to vindicate her federally protected right to be free of retaliation.

## Third Cause of Action

### (Negligent Hiring)

24.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 23, inclusive, as well as those of all other paragraphs herein, as though the same were fully stated herein. Defendant Smith is not named in this cause of action.

25.  Upon information and belief, defendants knew, and should have known, Clifton Kyle Smith was not a suitable person to be initially hired to work in an environment in which young women would work as dancers. Defendants were under an obligation to hire someone who would protect the dancers, i.e., ensure male patrons did not abuse them.  Defendants were under an obligation, pursuant to their cabaret and/or liquor licenses, to ensure all of their employees strictly complied with the terms and restrictions of those licenses.  Defendants were under a duty, given the nature of the business the Spice House conducts, to take stringent

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

measures to protect the women who work in such an environment.  Defendants owed a duty to plaintiff to protect her from a sexually hostile work environment.  Defendants failed to discharge that duty re the initial hiring of Mr. Smith and as a direct and proximate result plaintiff was harmed, as described herein.  Defendants subsequently breached the duty to exercise due care in hiring in an even more egregious manner when it rehired Mr. Smith – after knowing Smith committed a battery, an assault and an Open and Gross Lewdness on the premises of the Spice House for the purpose of sexual gratification.

26.  As a direct and proximate result, plaintiff was subject to the assault and battery, as described herein, and thereafter to the offensive and threatening presence of Smith on a daily basis.  Plaintiff was further offended by watching Smith provide liquor to underage women, whom he thereupon pressured and cajoled into engaging in prostitution, after causing them to become intoxicated.  Plaintiff was aware many of the young women who were pressured into engaging in prostitution never returned to the Spice House after their initial encounter with Smith.  Plaintiff formed the belief a number of those women did not return because they were traumatized by Smith and/or by their resultant experience with prostitution.  After Smith returned, plaintiff's work environment was rendered hostile "because of sex", as prohibited by Title VII of the 1964 Civil Rights Act, aka 42 U.S.C. 2000e, et seq.  Plaintiff was further traumatized by the March 15, 2019 conduct of Smith relative to a female customer; by the reaction of defendants' General Manager, and by the reaction of defendant Jamy Keshmiri and others at the March 20, 2019, meeting.  Plaintiff was aware Smith had been sexually harassing her co-employee, Julie Ramos.  Plaintiff was aware defendants had failed to adequately investigate Smith's conduct toward Ms. Ramos, and others; had protected Smith from a police investigation by failing to report Smith's conduct to the police and by discouraging others, including herself, from doing so; had manifested an intent to lie so as to protect Smith from law enforcement; and would otherwise protect Smith – because Smith was so adept at making

defendants large amounts of money by arranging for dancers to engage in prostitution with male patrons.   Accordingly, plaintiff was aware that, even though defendant Jamy Keshmiri stated an intent to be rid of Smith on March 20, 2019, Smith might nonetheless be allowed to frequent the Spice House premises, and probably would be eventually rehired.  Defendants thereby breached their duty, and compounded the breach of duty.

27.  As a direct an proximate result, plaintiff was injured and damaged as described therein.

Fourth Cause of Action

(Negligent Retention)

28.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 27, inclusive, as well as the allegations of all other paragraphs herein. Defendant Smith is not named in this cause of action.

29.  Defendants owed to plaintiff, and to its other female employees, a duty to retain in its employ only those employees who would not pose a danger to them, and/or render its workplace a hostile and threatening place by virtue of their presence – and the constant threat posed by their presence.

30.  Defendants breached this duty to plaintiff by, for instance, retaining Mr. Smith in their employ after he sexually harassed employee Julie Ramos (Ms. Ramos complained to one of defendants' managers in 2014 of Smith's repeated attempts to obtain her panties); and battered and assaulted plaintiff by committing an Open and Gross Lewdness on the premises of the Spice House. (The Declaration of Ms. Ramos accompanies this Complaint and Jury Demand and is incorporated herein.  It has been redacted to protect the identity of the woman who alleges she was raped by Mr. Smith.).  Further, defendants were aware Smith routinely followed female dancers, went into private rooms with dancers, and routinely attempted to

Page 12

have sexual relations with them.  Defendants were aware Smith made vulgar and obscene statements to dancers, and accepted money from some dancers, after arranging for prostitution liaisons for them.  Defendants were also aware Smith sold and/or dispenses illegal drugs, such as cocaine, on the Spice House premises.   Defendants consciously and deliberately breached this duty (although a premeditated breach is not required as a predicate to liability) because they wished to maximize profits from the operation of the Spice House through illegal means, i.e., through prostitution.

31.  As a direct and proximate result plaintiff was injured and damaged as described herein.

Fifth Cause of Action

(Negligent Supervision)

32.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 31, inclusive, as well as the allegations of all other paragraphs herein.  Defendant Smith is not named in this cause of action.

33.  Defendants owed to plaintiff the duty to properly supervise Mr. Smith, especially since they were aware of Mr. Smith's propensity, and skill, relative to engaging in criminal activities directly related to sex.  This duty was heightened after defendants became aware Smith had battered and assaulted plaintiff, per committing an Open and Gross Lewdness offence on the premises of the Spice House.

34.  Defendants failed to discharge this duty.  As a direct and proximate result, plaintiff was further traumatized by Smith's continued presence on the premises of the Spice House, sans proper supervision, and especially by Smith's conduct on March 15, 2019.  Defendants compounded the trauma plaintiff experienced by continuing to shield Smith per the March 15, 2019 occurrence.  For example, defendant's General Manager manifested an intention to lie on Smith's behalf, so as to attempt to insulate him from prosecution, even though defendant's

General Manager had no practical way of knowing for certain what occurred in defendants' women's restroom.

35. As a direct and proximate result, plaintiff was injured and damaged as described herein.

Sixth Cause of Action

(Outrage)

36. Plaintiff hereby incorporates the allegations of paragraphs 1 through 35, inclusive, as though the same were fully stated herein, as well as all other allegations herein stated. All defendants are named in this cause of action.

37. The conduct of the defendants, as described herein, constitutes the common law tort of outrage. For example, the defendants rehired Smith, and thereby exposed plaintiff to increased trauma and fear, because they wished to avail themselves of Smith's ability to exploit young women sexually, by causing them to become intoxicated and then engage in prostitution. The defendants contrived a scheme whereby they euphemistically referred to their percentage of a fee derived from payments for prostitution as a "buy out' fee. They allowed Smith to participate in obtaining a portion of the fees paid for prostitution and they themselves also participated in obtaining a portion of those fees via charging dancers to leave the premises with male customers, ostensibly so they could "buy out" of their shift. In fact, the dancers left for the purpose of engaging in paid sex, i.e., prostitution. They sometimes returned to their shift. The "buy out" fee was a thinly disguised mechanism whereby the defendants were paid for having arranged incidents of prostitution. This was the motivation of hiring Smith, rehiring Smith and for permitting Smith to roam the premises of the Spice House without supervision *after* defendants knew Smith had behaved as a sexual predator on the premises of the Spice House. Financial gain was the motivation for discouraging plaintiff, and others, from reporting Smith's activities to law enforcement. Financial gain was the motivation for General Manager

Page 14

Hoffman's threatening text, sent to plaintiff on the defendants' behalf, in the course and scope of his duties.

38.  Defendants committed the tort of outrage.  Defendant Smith is also culpable for the tort of outrage because of the battery and assault, and false imprisonment he committed upon plaintiff.

39.  As a direct and proximate result, plaintiff was injured and damaged as described herein.

<u>Seventh Cause of Action</u>

(Battery)

40.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 39, as well as the allegations of all other paragraphs.  Only defendant Smith is named in this cause of action (the other defendants are alleged to have ratified Smith's conduct and are therefore derivatively liable - see the Ratification Cause of Action below).

41.  Defendant Smith battered plaintiff in the summer of 2018 when he touched plaintiff in order to pull down plaintiff's pants and panties.  That battery was extraordinarily offensive, threatening and scary because defendant Smith thereupon stood over plaintiff and masturbated to the point of ejaculation.  Plaintiff became conscious almost immediately after defendant Smith touched her and  viewed defendant Smith in a mirror, i.e., plaintiff was reduced to pretending she was asleep as Smith masturbated.  Plaintiff was in terror, i.e., plaintiff apprehended she was about to be raped.

42.  As a direct and proximate result of the battery plaintiff suffered and was injured as alleged herein.  Plaintiff suffered extreme emotional distress and terror during this occurrence.

<u>Eighth Cause of Action</u>

(Assault)

43.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 42, as well as

the allegations of all other paragraphs.  Only defendant Smith is named in this cause of action (the other defendants are alleged to have ratified Smith's conduct and are therefore derivatively liable – see the Ratification Cause of Action below).

44.  Defendant Smith committed an assault upon plaintiff.  That is, by virtue of his conduct of touching plaintiff without her consent, and thereafter standing over plaintiff while masturbating, plaintiff caused plaintiff to apprehend she would be subject to further batteries, e.g., to batteries attendant to a sexual assault.

45.  As a direct and proximate result plaintiff was injured and damaged as described herein.

Ninth Cause of Action

(False Imprisonment)

46.  Plaintiff hereby incorporates the allegations of paragraphs 1 through 45, as well as the allegations of all other paragraphs.  Only defendant Smith is named in this cause of action (the other defendants are alleged to have ratified Smith's conduct and are therefore derivatively liable – see the Ratification Cause of Action below).

47.  Defendant Smith falsely imprisoned plaintiff during the period in which plaintiff was conscious and he stood over her, after having committed a battery for the purpose of partially disrobing her in order to enhance his sexual gratification.

48.  During the period in which plaintiff was falsely imprisoned by defendant Smith plaintiff suffered extreme emotional distress and outright terror and was otherwise damaged and injured as described herein.

Tenth Cause of Action

(Ratification)

49.  Plaintiff hereby incorporate the allegations of paragraphs 1 through 48 as though the same were fully stated herein.  Defendant Smith is not named in this cause of action.

Page 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

50.  The defendants ratified defendant Smith's actions, implicitly and explicitly, as alleged in the Sixth, Seventh, Eighth and Ninth Causes of Action, and are therefore jointly and severally liable for those causes of action.  Defendants ratified Smith's cause of action by failing to report his conduct to police; failing to gather and preserve evidence, e.g., video surveillance records and the semen Smith left on the VIP floor; actively discouraging plaintiff and others from reporting Smith's conduct to law enforcement authorities; rehiring Smith; and allowing Smith to roam the premises of the Spice House and continue to engage in pandering, the provision of alcohol to underage women, generally facilitating prostitution, and profiting from prostitution. Defendants' General Manager further ratified Smith's conduct by stating an intent to lie, so as to falsely exculpate Smith.  Defendants also communicated with plaintiff and compounded the trauma plaintiff had experienced by trivializing her emotions and fear of Smith.  Defendants effectively ratified Smith's conduct, because they wished to continue to financially benefit from Smith's ability to deftly manipulate dancers for the purpose of causing them to engage in prostitution.  And, defendants, via their actions and statements (e.g., General Manager Hoffman's stated intent to lie on Smith's behalf) communicated to plaintiff an intent to continue to enable Smith, and shield him from the consequences of his actions.  Defendants ratified Smith's tortious conduct toward plaintiff.

51.  Defendants are therefore each liable for the battery, assault, and false imprisonment Smith committed upon plaintiff.  Defendants are therefore also liable for the tort of outrage.

52.  Upon information and belief defendants continue to provide underage with woman with alcohol, for the purposing of manipulating them into prostitution.  Likewise, upon information and belief, defendants continue to profit from prostitution, which is arranged on the premises of the Spice House.

53.  As a direct and proximate result plaintiff was injured and damaged as described herein.

1  WHEREFORE, plaintiff requests the following relief:

2  1.  For awards of compensatory damages;

3  2.  For awards of punitive damages sufficient to punish and deter defendants from

4  engaging in similar conduct;

5  3.  For awards of special or actual economic damages, according to proof;

6  4.  For awards of costs and a reasonable attorney's fee; and

7  5.  For injunctive relief to compel defendants to adopt and actually enforce a reasonable

8  policy against sexual harassment and/or retaliation; to cease facilitating prostitution; to cease

9  providing alcohol to underage women; and to refrain from allowing the Spice House to be used

10  to facilitate prostitution; and for whatever other relief the Court or jury may deem just.

11  Plaintiff requests the Court appoint a Court Master to oversee the operation of the Spice House,

12  so as to protect the young women of this community from being coerced into prostitution.

13  DATED this 28th day of October, 2019.

14

15

16

17  _/s/ Mark Mausert_____

18  Mark Mausert
NV Bar No. 2398

19  729 Evans Avenue
Reno, NV 89512

20  TELEPHONE:(775) 786-5477
FACSIMILE: (775) 786-9658

21  *Attorney for Plaintiff*

22

23

24

25

26

27

28

1

Index of Exhibits

2

Issued Notice of Right to Sue..............................................................................Exhibit One

3

4

Kenneth McPartlin Declaration............................................................................Exhibit Two

5

Julie Ramos Declaration......................................................................................Exhibit Three

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28