Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax (775) 786-9658
mark@markmausertlaw.com
*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF NEVADA

CHELSEA LONG & JULIE RAMOS,                    Case No.: 3:19-CV-00652-LRH-CLB

        Plaintiffs,

    vs.                                              **SECOND AMENDED COMPLAINT
AND JURY DEMAND**

DIAMOND DOLLS OF NEVADA, LLC,
dba SPICE HOUSE, JAMY KESHMIRI,
KAMY KESHMIRI, CLIFTON KYLE
SMITH,

        Defendants.

_____/

    COME NOW plaintiffs, through counsel, and hereby complain of defendants as follows via this "Second Amended Complaint and Jury Demand".

<u>Jurisdiction, Venue & Jury Demand</u>

    1. Plaintiffs are women, who are residents of northern Nevada and who worked for defendant Diamond Dolls of Nevada, LLC (hereinafter "Spice House") in the capacity of a bartender (plaintiff Long) and an Assistant Manager (plaintiff Ramos). All, or almost all, acts, statements and omissions herein alleged occurred in northern Nevada, where plaintiffs were employed by defendant. Plaintiffs have obtained Notices of Right to Sue from the Equal Employment Opportunity Commission, dated October 2, 2019 (plaintiff Long) and a Notice

dated on or about December 2, 2019 (plaintiff Ramos)   These Notices are attached and are incorporated in this Second Amended Complaint and Jury Demand. The original Complaint and Jury Demand was timely filed in accord with Ms. Long's Notice of Right to Sue and this Second Amended Complaint and Jury Demand, whereby Ms.  Ramos appears for the first time, is timely filed in accord with Ms. Ramos' Notice of Right to Sue.  The Second Amended Complaint and Jury Demand is necessitated by the different dates on which the Notices of Right to Sue were issued.  That is, plaintiff Ramos only recently received her Notice of Right to Sue.  Prior to receipt, she was procedurally barred from bringing suit.  Accordingly, since the claims of the two plaintiffs are integrally related, a Second Amended Complaint and Jury Demand has been filed, whereby both plaintiffs are bringing their claims – as opposed to filing a separate lawsuit, which would almost certainly have required consolidation.  Plaintiffs hereby request a jury trial relative to all issues so triable.

2.  Defendant Diamond Dolls of Nevada, LLC, dba Spice House, is a limited liability company, corporation, limited partnership, partnership, or some other legal entity which previously employed plaintiffs in northern Nevada.  At all times herein mentioned defendant had at least fifteen employees working at least twenty weeks per year.

3.  Jamy Keshmiri and Kamy Keshmiri are brothers and own and operate defendant Diamond Dolls of Nevada, LLC.   The Keshmiri brothers, on information and belief, routinely orchestrate, oversee, direct and profit from criminal activities on the premises of the Spice House, and oversee, direct, acquiesce to and profit from criminal activities engaged in on the premises.  That is, for example, they oversee, manage, direct and profit from soliciting women to engage in prostitution, providing alcohol to underage women to facilitate solicitations for prostitution and arrange for prostitution transactions between customers and dancers who work at the Spice House.  New female dancers – especially very young women – are routinely told at orientation part and parcel of their jobs will entail leaving the premises of the Spice House with

male patrons, for the purpose of engaging in prostitution and/or engage in sexual acts on the premises of the Spice House.  The Keshmiris carefully cultivate good relations with various local government officials and employees – who have been, and are, allowed to frequent the Spice House and leave the Spice House in the company of female dancers, for the purpose of engaging in sexual activities with female dancers, on and off premises.  Because Jamy Keshmiri and Kamy Keshmiri routinely use the Spice House to facilitate criminal activities, from which they personally profit, they are not entitled to the protection of the form of a limited liability company, or any other corporate or company form.  They are estopped from using the limited liability company as a shield to personal liability – especially since the harm plaintiffs sustained was directly and integrally related to the criminal activities from which the Keshmiris routinely profit.  That is, because of the Keshmiris' personal involvement in illegal activities, such as cajoling women to engage in prostitution; providing alcohol to underage women so as to encourage them to engage in prostitution; conspiring to arrange for prostitution transactions; etc., they are to be deemed the employers of plaintiffs and therefore personally liable. Likewise, they are personally liable for the common law torts stated herein, both because of negligence and because they implicitly ratified defendant Smith's conduct.  Ratification occurred by the statements, actions and inaction of Jamy Keshmiri and Kamy Keshmiri and via the statements, actions and inactions of their employees, including General Manager, Mr. Hoffman.

4. Defendant Clifton Kyle Smith is an individual who, at various times, has been employed by defendants.  That is, he has been hired multiple times and fired at least twice. Defendant Smith was ostensibly employed as a bartender.  However, a substantial part of Smith's duties entailed cajoling and convincing young women to engage in prostitution and also in arranging prostitution liaisons with customers and handling, processing, distributing and receiving the resulting monies, or a portion thereof.  For example, while convincing young

women to engage in prostitution, Smith plied them with copious amounts of alcohol, usually in the form of shots of hard liquor, which was provided by the Spice House with the knowledge of its General Manager and the Keshmiris.  Smith liaisoned with male patrons and often convinced various women to leave the premises with them for prostitution purposes.   Smith often controlled and handled the financial transactions, and turned the resultant money, usually in the form of cash, over to the Spice House, i.e., to the Keshmiris.  Smith was routinely and integrally involved in ensuring the Spice House, i.e., the Keshmiri brothers, received the "buy out" fee, i.e., the Keshmiris' cut of whatever fee a male patron paid for having sex with a dancer – usually around four hundred dollars. Smith also routinely received a portion the monies male patrons paid for prostitution, i.e., a fee in addition to his normal pay which he received because he was able to arrange a prostitution liaison.

5. This Court has subject matter jurisdiction over this case per 28 U.S.C. 1343.  The Court has subject matter jurisdiction because plaintiffs are women who are alleging they were subject to a hostile work environment "because of sex", in violation of 42 U.S.C. 2000e, et seq. Plaintiffs were subject to retaliation because they opposed sexual harassment, i.e., plaintiffs were constructively and wrongfully discharged.  This Court has supplemental jurisdiction over the common law torts alleged herein pursuant to 28 U.S.C. 1367.

6. This Court has venue re this action pursuant to 42 U.S.C. 2000e-5(f)(3) because all, or almost all of the actions, statements and omissions which form the basis for this lawsuit occurred in northern Nevada, i.e., in the geographical area of this judicial District.

<u>First Cause of Action</u>

(Sexual Harassment)

7. Plaintiffs hereby incorporate the allegations of paragraphs 1 through 7, inclusive, as well as the allegations of all other paragraphs herein, as though the same had been fully stated. Defendant Smith is not named in this cause of action.

8. Plaintiff Long commenced working for defendant in approximately May, 2015 and worked primarily at the Spice House.   Plaintiff Long also worked at the Wild Orchid – another bar/cabaret, i.e., strip club, also owned and operated by the owners of the Spice House – brothers Jamy and Kamy Keshmiri.  Plaintiff Ramos began working for defendant Diamond Dolls in November, 2014 and was promoted to the position of Assistant Manager in December, 2017.  Plaintiff Ramos complained of sexual harassment by defendant Smith approximately four weeks after she was hired.  Plaintiff Ramos resigned in August, 2018, but return to work for defendant in mid-September, 2018.  Both plaintiffs were constructively and wrongfully discharged from defendants' employ on or about March 20, 2019, or alternatively, were fired on March 17, 2019.  Jamy Keshmiri and Kamy Keshmiri, prior to 2019, had a history of using the Spice House to facilitate prostitution, and to profit from systemic, organized and controlled prostitution.  That is, the Keshmiri brothers designed and oversaw a system whereby women, who originally intended only to dance, were pressured and/or enticed into engaging in prostitution.   Defendant Smith complemented this process via providing alcohol, especially to new, underage women.   The Spice House's percentage of prostitution fees were euphemistically described as "buy out" fees and these fees were divided at the end of shifts. See, e.g., redacted Declaration of former Spice House General Manager Kenneth McPartlin (that Declaration has been redacted as a courtesy to an individual named therein who alleges she was raped at the Spice House).  That Declaration is attached hereto and incorporated herein, as is the Declaration of plaintiff Ramos.

9.  In June or July of 2018, plaintiff Long was sexually battered by defendant Clifton Kyle Smith.  Smith approached plaintiff Long as she was sleeping in a VIP room.  Without her consent he grabbed her pants and panties and pulled them down around her legs.  Smith stood over plaintiff Long (who was terrified and pretended to continue to sleep), and masturbated to the point of ejaculation.  Mr. Smith was employed, in part, as a disc jockey by defendants.

However, upon information and belief,  Smith had other duties.  Smith served as a liaison

between male customers and female dancers, i.e., he routinely set up sexual encounters, off-site

and sometimes on-site. That is, Smith arranged for prostitution transactions.  Defendants

profited from these transactions by routinely charging "buy out" fees – between $100 to $500

each time a dancer left her shift, to go off-premises with a customer for the purpose of

engaging in prostitution.  Defendant Smith personally usually received a  fee for setting up such

liaisons.  The dancer received the remainder of the monies.  The "buy out" fee was, in fact, the

defendants' cut or percentage of each prostitution transaction.  Upon information, Smith, with

the knowledge of the individual defendants, routinely arranged for such prostitution

transactions, including relative to women as young as eighteen.  Smith, pursuant to arranging

for these transactions, regularly provided alcohol (usually shots) to dancers, including dancers

aged 18, 19 & 20.  Defendant Kamy Keshmiri likewise personally provided alcohol to

underage women on the premises of the Spice House.  See, e.g., Declaration of former General

Manager Kenneth McPartlin, page 1, paragraph #2.  Defendant Kamy Keshmiri overrode

General Manager McPartlin's decisions, which he made pursuant to an orientation to run a

clean club.  For example defendant Kamy Keshmiri often rehired women whom former

General Manager McPartlin fired for engaging in sex acts on the premises of the Spice House.

See, McPartlin Declaration, page 1, paragraph #3.  Smith was adept at convincing women to

engage in prostitution; arranging prostitution liaisons with customers, including payment for

prostitution services; and ensuring the other defendants financially profited from prostitution.

Because Smith was so adept at these aspects of his job, he was regarded as a very valuable

employee, i.e., Smith was able to make himself, and the defendants, large amounts of money on

a regular basis.  Plaintiffs were aware of Smith's activities and understood why Smith was

regarded as a valuable employee and protected by the other defendants from adverse

consequences which should have attended his sexual predation/harassment.  Plaintiffs were

also offended by defendants' practice of causing young women to become intoxicated and pressuring them into becoming prostitutes.  Plaintiff Long personally witnessed Smith recruit young women to be prostitutes, i.e., she heard him explain to new dancers if a customer wanted to leave with a dancer, the dancer was to contact the Floor Host, who would negotiate the price with the customer, and that a percentage of the price would go to the Spice House.  Plaintiff Long subsequently watched customers pay to leave with dancers, usually by cash, but sometimes via credit cards.  Plaintiff Long also witnessed General Manager Hoffman divide the monies the Spice House obtained thereby, and watched Smith be paid a portion of those monies for effecting the prostitution liaisons between dancers and male patrons.  Plaintiff Long witnessed Smith provide shots to young dancers, and after he succeeded in getting them intoxicated, walk them over to VIP customers, who would then leave the premises with them. Sometimes these young woman were underage, i.e., they were not of legal drinking age. Plaintiffs were offended by these practices.  Both plaintiffs were aware of what Smith's duties actually were.  Plaintiff Ramos witnessed some of Smith's conduct (see, e.g., plaintiff's Declaration, page 2, paragraph nos. 4,5, 6 & 7 (including Smith bragging about being a "pimp"), and learned from plaintiff Long and other employees of why Smith was regarded by the Keshmiris as such a valuable employee, i.e., because he was so adept at arranging prostitution liaisons and thereby earned the Keshmiris large amounts of money on a regular basis.  As stated, plaintiff Ramos was regularly sexually harassed by defendant Smith, e.g., Smith would ask plaintiff Ramos for her panties, i.e., he would ask plaintiff to take her panties off and give them to him; would offer to buy her lingerie – so she could wear such for him; etc. Plaintiff Ramos complained to then General Manager Brandon Lennar, who trivialized the complaint by stating, "[t]hat's how he is", while refusing to take action.  General Manager Lennar's cavalier and dismissive attitude and inaction increased the level of hostility.  General Manager Hoffman subsequently compounded that trivialization by benignly characterizing

Smith as a "flirt", while failing to implement adequate remedial action re Smith.  Both plaintiffs were aware defendants cultivated relationships with local government officials, e.g., allegedly some members of the  Reno City Council, and therefore allegedly acquired a certain level of protection relative to illegal activities, i.e., providing liquor to underage women and facilitating prostitution.  This knowledge exacerbated the plaintiffs' feelings of helplessness.  For example, plaintiffs realized, because of defendants' political influence, wealth and power (including the power to embarrass local government officials who frequented the Spice House), obtaining protection from Smith via complaints to law enforcement would be problematic.  Both plaintiffs understood, if they brought pressure via complaints to law enforcement regarding Smith, they would probably lose their jobs.

10.  Immediately after Smith battered and assaulted Ms. Long she informed plaintiff Julie Ramos of Smith's conduct.   On a number of occasions, commencing in 2014, plaintiff Ramos was sexually harassed by Smith, e.g., Smith would confront plaintiff Ramos and request she take off her panties and give them to him.   Shortly after informing plaintiff Ramos of Smith's conduct, plaintiff Long informed the defendants' attorney and General Manager of Smith's conduct. Upon information and belief, one or both, promptly informed at least one of the Keshmiri brothers.  The defendants believed plaintiff Long. For instance, defendants undertook no effort to gather evidence, e.g., to collect a sample of Smith's semen, which was left on the floor of the VIP room, where at plaintiff Long had been reclining when assaulted by Smith.  Smith's employment was (at least ostensibly) terminated for approximately four or five months.  However, defendants allowed Smith to return to the Spice House premises, which he did, during this four or five month period.  That is, Smith would return and drink alcohol at the bar, where at plaintiff Long was compelled to serve him.   Both plaintiffs realized Smith's boundaries regarding women were unknown and he had been willing to commit and Open and Gross Lewdness on the premises, which involved disrobing plaintiff Long without her consent.

Both women were in fear of Smith, i.e., of being assaulted and sexually molested or raped by Smith if he managed to located them alone on the premises of the Spice House.  See, e.g., *Ellison v. Brady,* 924 F.2d 872 (9th Cir. 1991) (under some circumstances the mere presence of a harasser will constitute a sexually hostile work environment).   Plaintiffs were aware Smith routinely committed other criminal offenses, i.e., felonies, on the premises of the Spice House, with the approval of General Manager Hoffman.  That is, plaintiffs were aware Smith was selling illegal drugs on the premises of the Spice House and Smith and General Manager Hoffman sometimes ingested cocaine on the premises.  See, e.g., plaintiff Ramos' Declaration, p.2, paragraph #5. In response to plaintiff Ramos informing defendants' General Manager she did not want to work with Smith anymore, General Manager Hoffman shouted at plaintiff Ramos, "Kyle's not the problem.  You're the problem!".  Plaintiff Ramos interpreted this reaction as a threat to her continued employment, i.e., if she continued to oppose Smith's conduct and/or presence in the work environment, she would be fired.

11.  Defendants, despite being informed Ms. Long had been subject to a sexual battery and assault, per conduct which, as described by Ms. Long constituted an Open and Gross Lewdness, and that Smith had been sexually harassing plaintiff Ramos for years, failed to inform police authorities of Smith's conduct after Smith was alleged to have committed a sexual assault on a female customer on March 15, 2019.  Defendants were, as of March 15, 2019, aware Smith had sexually harassed plaintiff Ramos.  See, the redacted Declaration of Ms. Ramos, attached hereto and incorporated herein. Spice House General Manager Hoffman actively and successfully discouraged plaintiff Long from reporting Smith's conduct to law enforcement authorities.  General Manager Hoffman told plaintiff Long it was "not a good idea" to inform police authorities, or words to that direct effect.  And General Manager Hoffman openly stated his intent to lie to Reno Police Officers, so as to falsely exculpate defendant Smith by claiming he, Hoffman, was present in the women's restroom with Smith at

the time he was alleged to have committed a sexual assault on March 15, 2019.  General Manager Hoffman did, in fact, posit this lie to at least one Reno Police Officer.  Smith was not, therefore, prosecuted, i.e., criminal charges were not filed against defendant Smith.

12.  Approximately four or five months after Smith committed an Open and Gross Lewdness on the Spice House premises, defendants rehired Smith and informed plaintiffs they had to work with Smith on a daily basis. Smith subsequently compounded his conduct by telling plaintiff Long he regarded the encounter, i.e., his assault and battery of plaintiff Long as a "mutual situation" and claimed he thought plaintiff Long had consented to his conduct. Smith would often stay on the Spice House premises after his shift was over and drink at the Spice House bar.  Plaintiff Long, who was working as a bartender, was forced to serve drinks to Smith, i.e., to interact face-to-face with him on a frequent basis.  Plaintiff Long, after being battered and assaulted by Smith, was fearful of Smith and regarded his mere presence as constituting a sexually hostile work environment.  Likewise, plaintiff Ramos, because she had been sexually harassed by Smith for years and because she learned of the manner in which Smith committed an Open and Gross Lewdness re her friend and co-employee, regarded Smith as dangerous – and his mere presence came to constitute a sexually hostile work environment for her.  That is, plaintiffs did not know where Smith's boundaries were, e.g., whether they included a propensity and willingness to commit a sexual assault.  If the allegations of the female customer, who alleges she was sexually assaulted on March 15, 2019, are accurate, plaintiffs' apprehension were accurate.  A reasonable woman, similarly situated, would have regarded Smith's mere presence in the work environment as constituting a sexually hostile work environment.

13.  Plaintiff Long was present on March 15, 2019, when a woman she knew visited the Spice House with her husband.  Plaintiff Long served this woman a large amount of alcohol, which she ingested.  Plaintiff Long observed this woman exit the women's bathroom almost

immediately after Smith did and was informed by the woman, who was intoxicated, she had

sex with Smith in the women's room. Plaintiff Long became aware the woman was alleging

Smith raped her, i.e., she made statements accusing Smith of rape in plaintiff's presence.

Plaintiff Long knew the woman was intoxicated because she had served her a substantial

amount of hard liquor and was able to observe her demeanor.  Plaintiff Long knew this woman

lacked capacity to consent to sexual intercourse and became aware the woman was alleging the

sexual encounter was not consensual.  That night, while still working, plaintiff Long heard

Smith state, "I didn't touch her.  I didn't rape that woman.  I can't go to jail."  General Manager

Hoffman responded, "don't worry man, I got your back.  I'll make sure you don't go to jail."

Plaintiff Long heard this exchange and was offended thereby.  Plaintiff Long subsequently

learned General Manager Hoffman did lie to the police and thereby falsely exculpated Smith.

14.  In the early morning hours of March 16, 2019, while plaintiff Long was working

the same shift, she informed General Manager Hoffman she was very uncomfortable with what

had just happened, i.e., with the interaction between Smith and the woman who alleged she was

raped by Smith.  General Manager Hoffman cut plaintiff Long off.  He told plaintiff Long he

did not believe the woman was raped and he intended to lie to the police and thereby state he

was in the bathroom with Mr.  Smith and the woman, and nothing happened.

15.  Plaintiffs scheduled a meeting with defendant Jamy Keshmiri about the alleged

rape, i.e., for the purpose of objecting to the continued presence of Smith in the Spice House

workplace and Hoffman's lie to the Reno police.  When General Manager Hoffman learned of

the scheduled meeting he responded by texting Ms. Ramos and thereby informed Ms. Ramos

everyone, i.e., Ms. Ramos and Ms. Long, were fired.

16.  On March 20, 2019, plaintiffs attended a meeting, at which Manager Hoffman and

defendant Jamy Keshmiri attended.  At this meeting Jamy Keshmiri focused on Ms. Long and

Ms. Ramos and harshly criticized them.  Defendant Jamy Keshmiri threatened the employment

of both women via threatening to close the Spice House.  Defendant Jamy Keshmiri did not offer to curtail prostitution on the Spice House premises.

17.   In response to the sexually hostile work environment, created and maintained by defendants, plaintiffs resigned their employment on or about March 20, 2019. Plaintiffs were constructively and wrongfully discharged from the employ of the Spice House.  A hypothetical reasonable woman in either plaintiff's position, knowing what each plaintiff knew, and having experienced what either plaintiff did, would have likewise resigned.  For instance, plaintiffs were fearful Smith would be allowed back on the premises of the Spice House, and would be re-hired.  Plaintiffs' fears were reasonable, i.e., a hypothetical reasonable woman would have harbored the same apprehensions based on defendants' (1) history of rehiring Smith; (2) defendants' history of discouraging reports of Smith's criminal activity, perpetrated on the Spice House premises;  (3) General Manager Hoffman's immediate reaction which consisted of failing to conduct an adequate inquiry as to whether Smith committed a sexual assault, while immediately manifesting a willingness to lie so as to exculpate Smith; (4) Hoffman's lie to the police, which probably resulted, in material part, in the failure to prosecute Smith; (5) the defendants' failure to discipline Hoffman for lying to the police and/or attempting to fire plaintiffs; (6) the defendants' standing policy of prohibiting/discouraging reports of criminal activity involving sexual misconduct on the Spice House premises; (7) the financial utility of Smith to the defendants, i.e., the fact that Smith was very adept at cajoling and pressuring women to engage in prostitution and also good at soliciting male customers to pay for prostitution; (8) toleration of Smith's aberrant, open and aggressive sexual misconduct, e.g., following dancers into their dressing room, asking them for sex, bragging about being a pimp, etc., etc. (9) Smith's ability to harm the defendants because of his extensive knowledge of the criminal activities the defendants have financially profited from for years; (10) General Manager Hoffman's attempt to fire plaintiffs; (11) hostile statements made by Kamy Keshmiri,

e.g., his threats to harm City officials by exposing their relationships and/or sexual conduct with Spice House dances; and (12) the hostile and inappropriate statements made by Jamy Keshmiri at the March 20, 2019, meeting.

18.  On or about May 24, 2019, General Manager Hoffman compounded the hostility plaintiffs experienced by sending plaintiff Long a text message.  He thereby threatened to "press charges" against plaintiff Long; informed plaintiff Long of the identity of his attorney; and stated an intent to sue plaintiff Long – in response to learning plaintiff Long had filed an Intake Form (or initial Complaint) with the Nevada Equal Rights Commission, or otherwise having manifested an intent to invoke her legal rights against the Spice House.  Plaintiff Ramos learned shortly thereafter of General Manager Hoffman's conduct and became scared and intimidated as a result.  Several employees of the Spice House visited plaintiff Ramos' place of employment – apparently for the purpose of dissuading her from cooperating with plaintiff Long.  Plaintiff Ramos was not present, but learned of the visit shortly thereafter.

19.  As a direct proximate result of being subject to a sexually hostile work environment plaintiffs suffered emotional distress, fear, apprehension, loss of enjoyment of life, recurrent negative memories, and nightmares.  It has been necessary for plaintiffs to incur costs and retain counsel in order to vindicate their federally protected right to a workplace free of sexual hostility.

<u>Second Cause of Action</u>

(Retaliation)

20.  Plaintiffs hereby incorporate the allegations of paragraphs 1 through 20, inclusive, as well as those of all other paragraphs herein, as though the same were fully stated herein. Defendant Smith is not named in this cause of action.

21.  Plaintiffs were constructively and wrongfully discharged.  A constructive discharge

is a form of retaliation.

22.  As a direct and proximate result of being subject to retaliation, plaintiffs have been injured and damaged as described herein.  Further, plaintiffs suffered economic damage, i.e., lost wages, tips and benefits.  It has been necessary for plaintiffs to incur costs and hire counsel in order to attempt to vindicate their federally protected right to be free of retaliation.

<u>Third Cause of Action</u>

(Negligent Hiring)

23.  Plaintiffs hereby incorporates the allegations of paragraphs 1 through 23, inclusive, as well as those of all other paragraphs herein, as though the same were fully stated herein. Defendant Smith is not named in this cause of action.

24.  Upon information and belief, defendants knew, and should have known, Clifton Kyle Smith was not a suitable person to be initially hired to work in an environment in which young women would work as dancers. Defendants were under an obligation to hire someone who would protect the dancers, e.g., ensure male patrons did not abuse them.  Defendants were under an obligation, pursuant to their cabaret and/or liquor licenses, to ensure all of their employees complied with the terms and restrictions of those licenses.  Defendants were under a duty, given the nature of the business the Spice House conducts, to take stringent measures to protect the women who work in such an environment.  Defendants owed a duty to plaintiffs to protect them from a sexually hostile work environment.  Defendants failed to discharge that duty re the initial hiring of Mr. Smith and as a direct and proximate result both plaintiffs were harmed, as described herein.  Defendants subsequently breached the duty to exercise due care in hiring in an even more egregious manner when it maintained Smith's employment subsequent to plaintiff Ramos' 2014 complaint of sexual harassment and then rehired Mr. Smith – after knowing Smith committed a battery, an assault and an Open and Gross Lewdness on the premises of the Spice House for the purpose of sexual gratification.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

25.  As a direct and proximate result, plaintiff Long was subject to the assault and battery, as described herein, and both plaintiffs were thereafter subject to the offensive and threatening presence of Smith on a daily basis, e.g., to his attempted (and sometimes successful) sexual predation relative to dancers; his conduct re morphing dancers into prostitutes; bragging about being a "pimp"; etc.  That is, for instance, plaintiffs were offended by watching Smith provide liquor to underage women, and/or being aware of this ongoing practice, whom he thereupon pressured and cajoled into engaging in prostitution, after causing them to become intoxicated.  Plaintiffs were aware many of the young women who were pressured into engaging in prostitution never returned to the Spice House after their initial encounter with Smith.  Plaintiffs formed the belief a number of those women did not return because they were traumatized by Smith and/or by their resultant experience with prostitution. After Smith returned, plaintiffs' work environment was rendered hostile "because of sex", as prohibited by Title VII of the 1964 Civil Rights Act, aka 42 U.S.C. 2000e, et seq.  Plaintiffs were further traumatized by the March 15, 2019 conduct of Smith relative to a female customer; by the reaction of defendants' General Manager, and by the reaction of defendant Jamy Keshmiri and others at the March 20, 2019, meeting.  Both plaintiffs were aware of the sexual harassment each other had endured, i.e., the plaintiffs communicated with each other. Plaintiffs were aware defendants had failed to adequately investigate Smith's conduct toward Ms. Ramos, and others; had protected Smith from a police investigation by failing to report Smith's conduct to the police and by discouraging others, including plaintiff Long, from doing so; had manifested an intent to lie so as to protect Smith from law enforcement; and would otherwise protect Smith – because Smith was so adept at making defendants large amounts of money by arranging for dancers to engage in prostitution with male patrons.  Accordingly, plaintiffs were aware that, even though defendant Jamy Keshmiri stated an intent to be rid of Smith on March 20, 2019, Smith might nonetheless be allowed to frequent the Spice House

premises, and probably would be eventually rehired.  Defendants thereby breached their duty, and compounded the breach of duty.

26.  As a direct an proximate result, plaintiffs were injured and damaged as described therein.

Fourth Cause of Action

(Negligent Retention)

27.  Plaintiffs hereby incorporate the allegations of paragraphs 1 through 27, inclusive, as well as the allegations of all other paragraphs herein. Defendant Smith is not named in this cause of action.

28.  Defendants owed to plaintiffs, and to its other female employees, a duty to retain in its employ only those employees who would not pose a danger to them, and/or render its workplace a hostile and threatening place by virtue of their presence – and the constant threat posed by their presence.

29.  Defendants breached this duty to plaintiffs by, for instance, retaining Mr. Smith in their employ after he sexually harassed employee plaintiff Ramos and battered and assaulted plaintiff Long on the premises of the Spice House.  Further, defendants were aware Smith routinely followed female dancers, went into private rooms with dancers, and routinely attempted to have sexual relations with them.  Defendants were aware Smith made vulgar and obscene statements to dancers, and accepted money from some dancers, after arranging for prostitution liaisons for them.  Defendants were also aware Smith sold and/or dispensed illegal drugs, such as cocaine, on the Spice House premises.   Defendants consciously and deliberately breached this duty because they wished to maximize profits from the operation of the Spice House through illegal means, i.e., through prostitution.

30.  As a direct and proximate result plaintiffs were injured and damaged as described

herein.

Fifth Cause of Action

(Negligent Supervision)

31.  Plaintiffs hereby incorporate the allegations of paragraphs 1 through 31, inclusive, as well as the allegations of all other paragraphs herein.  Defendant Smith is not named in this cause of action.

32.  Defendants owed to plaintiffs the duty to properly supervise Mr. Smith, especially since they were aware of Mr. Smith's propensity, and skill, relative to engaging in criminal activities directly related to sex.  This duty was heightened after defendants became aware Smith had battered and assaulted plaintiff Long.

33.  Defendants failed to discharge this duty.  As a direct and proximate result, plaintiffs were further traumatized by Smith's continued presence on the premises of the Spice House, sans proper supervision, and especially by Smith's conduct on March 15, 2019.  Defendants compounded the trauma plaintiffs experienced by continuing to shield Smith per the March 15, 2019 occurrence.  General Manager Hoffman, upon information and belief, directly lied to the Reno Police, i.e., Hoffman told the police he was in the ladies' room with Smith.  Smith told the police he was alone with the woman in the ladies' room.  Hoffman lied for the express purpose of insulating Smith from criminal prosecution.   At no time during the investigation of the alleged rape did anyone acting on behalf of the defendants inform the Reno Police Officers who investigated the allegation of rape that Smith had, only months prior, committed an Open and Gross Lewdness on the premises of the Spice House, or that Smith routinely sexually harassed dancers, and had harassed Ms. Ramos.  Defendants, through their deliberate withholding of information, and through Hoffman's lie, ratified Smith's conduct relative to the woman who alleged she was raped.  Further, defendants again ratified Smith's Open and Gross Lewdness relative to plaintiff Long and Smith's sexual harassment of both plaintiffs.

Hoffman's lie, and the defendants' inaction, i.e., concealment of Smith's conduct, sent a powerful message to both plaintiffs – Smith's criminal and predatory sexual conduct would be tolerated and concealed because of the large amounts of money Smith routinely earned for defendants via his demonstrated skill at setting up liaisons for the purpose of prostitution.

34.  As a direct and proximate result, plaintiffs were injured and damaged as described herein.

Sixth Cause of Action

(Outrage)

35.  Plaintiffs hereby incorporate the allegations of paragraphs 1 through 35, inclusive, as though the same were fully stated herein, as well as all other allegations herein stated.  All defendants are named in this cause of action.

36.  The conduct of the defendants, as described herein, constitutes the common law tort of outrage.  For example, the defendants rehired Smith, and thereby exposed plaintiffs to increased trauma and fear, because they wished to avail themselves of Smith's ability to exploit young women sexually, by causing them to become intoxicated and then engage in prostitution. The defendants contrived a scheme whereby they euphemistically referred to their percentage of a fee derived from payments for prostitution as a "buy out' fee.  They allowed Smith to participate in obtaining a portion of the fees paid for prostitution and they themselves participated in obtaining a portion of those fees via charging dancers to leave the premises with male customers, ostensibly so they could "buy out" of their shift.  In fact, the dancers left for the purpose of engaging in paid sex, i.e., prostitution.  They sometimes returned to their shifts, but when they did so, the "buy out" fee was not partially or wholly refunded.  The "buy out" fee was a thinly disguised mechanism whereby the defendants were paid for having arranged incidents of prostitution.  This was the motivation of hiring Smith, rehiring Smith and for permitting Smith to roam the premises of the Spice House without supervision *after* defendants

knew Smith had behaved as a sexual predator on the premises of the Spice House.  It was also

the motive for concealing Smith's conduct from the Reno Police, and for berating the plaintiffs

on March 20, 2019, and for Hoffman's attempt to fire both plaintiffs.  Financial gain was the

motivation for discouraging plaintiffs, and others, from reporting Smith's activities to law

enforcement.  Financial gain was also the motive for tolerating Hoffman's conduct, i.e., his lies

to the police.  At all times herein mentioned, General Manager Hoffman acted within the

course and scope of his duties, i.e., part of his job entailed concealing the conduct of Smith and

facilitating Smith's ability to arrange prostitution liaisons.

37.  Defendants committed the tort of outrage.  Defendant Smith is also culpable for the

tort of outrage because of the battery and assault, and false imprisonment he committed upon

plaintiff – as well as his other sexually harassing conduct and statements.

38.  As a direct and proximate result, plaintiffs were injured and damaged as described

herein.

<u>Seventh Cause of Action</u>

(Battery)

39. Plaintiff Long hereby incorporates the allegations of paragraphs 1 through 39, as

well as the allegations of all other paragraphs.    Only plaintiff Long is bringing this cause of

action.  All defendants are named in this cause of action because the defendants ratified

Smith's conduct by, for instance, concealing that conduct even after Smith was accused by a

patron of raping her in defendants' ladies' room.

40.  Defendant Smith battered plaintiff Long in the summer of 2018 when he touched

plaintiff Long in order to pull down plaintiff's pants and panties.  That battery was

extraordinarily offensive and threatening because defendant Smith thereupon stood over

plaintiff Long and masturbated to the point of ejaculation.  Plaintiff Long became conscious

almost immediately after defendant Smith touched her and  viewed defendant Smith in a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

mirror, i.e., plaintiff Long was reduced to pretending she was asleep as Smith masturbated. Plaintiff was in terror, i.e., plaintiff Long apprehended she was about to be raped.

41.  As a direct and proximate result of the battery plaintiff Long suffered and was injured as alleged herein.  Plaintiff suffered extreme emotional distress and terror during this occurrence.

<u>Eighth Cause of Action</u>

(Assault)

42.  Plaintiff Long hereby incorporates the allegations of paragraphs 1 through 42, as well as the allegations of all other paragraphs.  All defendants are named via this cause of action because the defendants ratified Smith's conduct.

43.  Defendant Smith committed an assault upon plaintiff Long.  That is, by virtue of his conduct of touching plaintiff Long without her consent, and thereafter standing over plaintiff while masturbating, defendant Smith caused plaintiff Long to apprehend she would be subject to further batteries, e.g., to batteries attendant to a sexual assault.

44.  As a direct and proximate result plaintiff Long was injured and damaged as described herein.

<u>Ninth Cause of Action</u>

(False Imprisonment)

45.  Plaintiff Long hereby incorporates the allegations of paragraphs 1 through 45, as well as the allegations of all other paragraphs.  All defendants are named in this cause of action because defendants ratified Smith's conduct.

46.  Defendant Smith falsely imprisoned plaintiff Long during the period in which plaintiff Long was conscious and he stood over her, after having committed a battery for the purpose of partially disrobing her in order to enhance his sexual gratification.

47.  During the period in which plaintiff Long was falsely imprisoned by defendant

Smith plaintiff suffered extreme emotional distress and outright terror and was otherwise damaged and injured as described herein.

WHEREFORE, plaintiffs request the following relief:

1. For awards of compensatory damages;

2. For awards of punitive damages sufficient to punish and deter defendants from engaging in similar conduct;

3. For awards of special or actual economic damages, according to proof;

4. For awards of costs and a reasonable attorney's fee; and

5. For injunctive relief to compel defendants to adopt and actually enforce a reasonable policy against sexual harassment and/or retaliation; to cease facilitating prostitution; to cease providing alcohol to underage women; and to refrain from allowing the Spice House, and their other clubs, to be used to facilitate prostitution; and for whatever other relief the Court or jury may deem just.  Plaintiffs request the Court appoint a Court Master to oversee the operation of the Spice House, so as to protect the young women of this community from being coerced into prostitution.

DATED this 30th day of January, 2020.

  /s/ Mark Mausert

Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
TELEPHONE:(775) 786-5477
FACSIMILE: (775) 786-9658
*Attorney for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury that I am an employee of Mark Mausert Law Office; I am over the age of eighteen (18) years; I am not a party to, nor hold an interest in this action; and on the date set below, I sent via United States Postal Service mail and electronic service, a true and correct copy of, **PLAINTIFFS' SECOND AMENDED COMPLAINT,** to the addressee(s) listed below:

Ricardo Cordova
Anthony Hall
Simons Hall & Johnston PC
6490 S. McCarran Blvd., Suite F-46
Ren, NV 89509

DATED this 30th day of January, 2020.

        /s/ Brittaney Martin
Brittaney Martin
Employee of Mark Mausert

1

**<u>Index of Exhibits</u>**

2   Chelsea Long Issued Notice of Right to Sue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 1

3   Julie Ramos Issued Notice of Right to Sue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 2

4   Kenneth McPartlin Declaration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 3

5   Julie Ramos Declaration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28