1
2
3
4
5

Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax (775) 786-9658
mark@markmausertlaw.com
*Attorney for Plaintiffs*

6

**IN THE UNITED STATES DISTRICT COURT**

7

**IN AND FOR THE DISTRICT OF NEVADA**

8
9
10
11
12
13
14
15

| | |
|---|---|
| CHELSEA LONG & JULIE RAMOS, | Case No.: 3:19-CV-00652-LRH-CLB |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| DIAMOND DOLLS OF NEVADA, LLC, dba SPICE HOUSE, JAMY KESHMIRI, KAMY KESHMIRI, CLIFTON KYLE SMITH and DOES I-X, | |
| Defendants | |

16
17
18
19
20

COMES NOW plaintiffs, through counsel, and hereby Oppose Defendants' Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56. (hereinafter "Defendants' Motion"). This Opposition is supported by the pleadings and documents on file herein and by the accompanying points and authorities, exhibits, and any oral arguments the Court may order.

21
22
23
24
25
26
27
28

## POINTS AND AUTHORITIES

**I.** **Summary Judgment under Fed. R. Civ. P. 56 ("FRCP 56")**

   **A. Legal Standard**

Pursuant to FRCP 56(a), summary judgment shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial burden of proof showing an absence of a genuine, material, dispute, and an entitlement to judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Rule provides a "relatively lenient standard" to survive the motion and continue to trial -- if with the evidence presented, a reasonable jury *could* return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). The evidence presented by the movant should also be viewed in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

A "genuine dispute" exists when a rational factfinder, considering the evidence, could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 2677, 174L. Ed. 2d 490 (2009). "Ergo, a dispute is 'genuine' if it has a real basis in the evidentiary record." *See Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). The court will test the "dispute" through the lens of the quantum proof applicable to the substantive claim or defense at issue. *Anderson.*, 477 U.S. at 248. (Title VII cases carry a preponderance of the evidence quantum of proof).

"A fact is 'material' if it might affect the outcome of the case." *Id.* Like a "genuine dispute," whether a fact is "material" hinges on substantive law at issue *Id.* Disputes cannot be irrelevant or unnecessary for summary judgment purposes. *Id.*

Judgment is appropriate "as a matter of law" when the moving party should prevail. *Id.* Even if the moving party's motion for summary judgment is uncontested, or unresponded to, it is

not enough. *Edwards v. Aguillard*, 482 U.S. 578, 595, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); *Torres-Rosado v. Rother-Sabat*, 335 F.3d 1, 9 (1st. Cir. 2003).

Under FRCP 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on [1] personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the affiant or declarant is competent to testify on the matters stated." When setting out facts that would be admissible in evidence, "more is required from an affiant than mere hearsay and legal conclusions." *Doff v. Brunswick Corp.*, 372 F.2d 801, 804; n1 (9th Cir. 1966). Personal Knowledge is defined as, "knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." KNOWLEDGE (17c), Black's Law Dictionary (11th ed. 2019).

In a motion for summary judgment a court may only consider admissible evidence. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) (The nonmoving party does not need to, "produce evidence in a form that would be admissible at trial." *Curnow v. Ridgecrest Police*, 952 F.2d 321, 323 (9th Cir. 1991)).

In addition to meeting the requirements of FRCP 56(c), documents authenticated through personal knowledge must be attached to an affidavit, where the documents could be admitted into evidence by the affiant. *Orr.* at 773-74. However, a proper foundation to admit the documents into evidence may also be established through Federal Rule of Evidence 901(b) or 902. *Id. See* Fed. R. Evid. 901(b) (enumerating methods with which to authenticate evidence); *See Also* Fed. R. Evid. 902 (describing self-authenticating documents which need no foundation).

Under FRCP 56(c) the, "party asserting that a fact . . . is genuinely disputed must support the assertion by…" However, in the case that a Motion for Summary Judgment is filed so early into the litigation process that there has been little or no time for discovery to take place, FRCP 56(d) requires that, "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson.*, 477 U.S. at 250 n.5; *See Also Metabolife Int'l v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). Where no discovery

has taken place, the non-movant cannot be expected to adequately support an assertion that a fact is genuinely disputed when the non-movant does not yet have access to evidence which would adequately support that assertion.

FRCP 56(e) enumerates actions that the court may take when a party fails to support an assertion of fact adequate to meet the requirements of FRCP 56(c).

## II.     42 U.S.C. § 2000e ("Title VII")

### A.  Legal Standard

Title VII defines an "employer" as, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Title VII defines an "employee" as, "an individual employed by an employer."

Determining whether a relationship is one of employment or independent contractor requires a "fact-specific inquiry which 'depends on the economic realities of the situation.'" *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) quoting *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980). The primary factor is the employer's right to control the means and manner of the worker's performance. *Id.*

The Supreme Court has adopted the common-law test in determining who is an employee when the statute containing the term does not helpfully define it. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). Because Title VII defined "employee" in a circular manner and the statute did not suggest something other than common law agency principles should be applied. *Murray v. Principal Financial Group, Inc.*, 613 F.3d 943, 945 (9th Cir. 2010).

The test is summarized as follow:

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by

which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; [1] the source of the instrumentalities and tools; [2] the location of the work; [3] the duration of the relationship between the parties; [4] whether the hiring party has the right to assign additional projects to the hired party; [5] the extent of the hired party's discretion over when and how long to work; [6] the method of payment; [7] the hired party's role in hiring the paying assistant; [8] whether the work is part of the regular business of the hiring party; [9] whether the hiring party is in business; [10] the provision of employee benefits; [11] and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-324 (internal citations omitted).

The common-law test contains "no shorthand formula or magic phrase that can be applied to find the answer, … all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id*. at 324; quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968).

An agreement or contract characterizing the hired party as an independent contract does not necessarily make it so. This Court applied the common-law test despite an agreement characterizing a taxicab driver as a contractor. *Doud v. Yellow Cab of Reno, Inc.*, 96 F.Supp.3d 1076, 1089-1105 (2015). The court explained:

> … the fact that a taxicab operator chooses to enter into an arrangement with a driver described as an independent contractor *is not controlling as to whether or not the driver is an independent contractor or employee as that term is used in the ADA*. Instead, this is just one factor *among many* that must be considered in determining the relationship status between the parties under common law principles of agency.

*Id*. at 1088 (ruling intent of the parties did not tip in favor of finding Mr. Doud was either an independent contractor or employee); *see also N.L.R.B. v. Friendly Cab Co., Inc.*, 512 F.3d 1090 (9th Cir. 2008) (ruling Taxicab drivers who leased cabs from employer were "employees," not independent contractors…) (emphasis added).

## **Argument**

I.     **Defendants' Motion for Partial Summary Judgment should be denied because Defendants have failed to adequately show under Fed. R. Civ. P. 56 that there is**

1
2

**no genuine dispute of material fact in regard to Diamond Dolls is an "employer" for the purposes of Title VII, and are therefore, not entitled to judgment as a matter of law.**

3
4
5
6
7
8
9
10
11
12

Fed. R. Civ. P. 56(a) requires that for summary judgment to be proper, "the movant shows that there is no genuine dispute as to any material fact." The Rule provides a "relatively lenient standard" to survive the motion and continue to trial. *Anderson*, 477 U.S. at 248. The evidence presented by the movant should also be viewed in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157.  "A fact is 'material' if it might affect the outcome of the case." *Anderson*, 477 U.S. at 248.  Like a "genuine dispute," whether a fact is "material" hinges on the substantive law at issue (Title VII). *Id.* (Title VII defines an "employer" as, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.") Disputes cannot be irrelevant or unnecessary for summary judgment purposes. *Id.*

13
14
15
16
17
18
19

A "genuine dispute" exists when a rational factfinder, considering the evidence, could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. at 586.  "Ergo, a dispute is 'genuine' if it has a real basis in the evidentiary record." *See Melton* 841 F.3d at 1219. The court will test the "dispute" through the lens of the quantum proof applicable to the substantive claim or defense at issue. *Anderson.*, 477 U.S. at 248. (Title VII cases carry a preponderance of the evidence quantum of proof). The evidence presented by the movant should also be viewed in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157.

20
21
22
23
24

Defendants, Diamond Dolls of Nevada, LLC, dba Spice House (hereinafter "Diamond Dolls") allege that, "Diamond Dolls does not have enough employees to be subject to 42 U.S.C. § 2000e." Defendants' Motion, pp. 2. Defendants' further allege that, "The only way Diamond Dolls can be found to employ fifteen or more employees is if Plaintiffs claim that the cabaret dancers are Diamond Dolls employees, instead of independent contractors." Defendants' Motion, pp. 2.

25
26
27

In the present case whether Diamond Dolls is an employer is a "material fact", because if Diamond Dolls is found to not be an employer for the purposes of Title VII, Plaintiffs' Title VII

28

claims will be defeated. Therefore, whether Diamond Dolls is an employer is a material fact under Rule 56 because it hinges on the substantive law at issue (Title VII) and will affect the outcome of the case by defeating Plaintiff's Title VII claims.

The Declaration of Kenneth McPartlin provides a window into the real world of the Spice House – as opposed to the façade defendants adhere to. The defendants used the façade of a dance club, or strip club, to orchestrate prostitution. They appear to have co-opted local government officials to avoid scrutiny by local law enforcement, and made substantial monies (approximately 40 to 50%) from each prostitution transaction. Mr. McPartlin tried to run a clean club, but his efforts were routinely overridden by defendant Kamy Keshmiri. See, Declaration pp.2-3. The Keshmiris got paid re the prostitution liaisons via "buy out" fees, i.e., the monies the women had to pay in order to leave the club with patrons – for brief periods, in order to have sexual relations in return for payments – the amount of which were negotiated ***by the defendant***, i.e., bydefendant's Floor Host. In other words, these "independent contractors" were paid according to fees negotiated by defendants and had to pay defendants in order to leave the premises. See, McPartlin Declaration, page 3, paragraph 8. These are circumstances inimical to the characterization of "independent contractor", and standing alone, defeat the defendants' arguments re employee versus independent contractor status. Mr. McPartlin states in part:

> It was understood, i.e., it was common knowledge that the purpose of the buy out fees was so the clubs could acquire a percentage of the monies which were generated by prostitution. That is, the "buy out" fee was a particular club's cut of the prostitution fee. These fees varied between $100 and $500, depending on the transaction. These fees were either paid in cash or "dance dollars". That is, a customer would buy "dance dollars" on his credit card and he could then use the dance dollars for whatever he wanted. . . .

McPartlin Declaration, p.2, lines 13-18.

The managers of the Spice House received a percentage of the "buy out" fees money, i.e., they were encouraged to arrange prostitution liaisons. Independent contractors are not assessed massive fees for leaving the job early. They come and go as they please – hence their "independent" nature and classification.

Plaintiff Long executed an Affidavit on July 22, 2019.  She demolished the notion dancers are independent contractors.  Defendants pressured the dancers to engage in prostitution, i.e., it was part and parcel of their jobs.  ***Most importantly, the defendants controlled the most important aspects of prostitution, i.e., the price and the division of the illicit monies thereby obtained.***

Ms. Long attested, in part:

> I witness[ed] [sic] [Clifton Kyle] Smith explain to the new dancers, in [General Manager] Hoffman's presence the procedure for leaving early with a customer.  That is, I heard Smith explain, if a customer wanted to leave with them outside of the Club, the dancer would have to get into contact with the Floor Host and that the Floor Host ***would negotiate the price with the customer*** and that there would be a percentage which went to the Spice House and the rest would go to the dancer.

Long Affidavit, p.4, lines 7-13 (emphasis added); also see, p.5.

Independent contractors negotiate their fees. The Spice House dancers did not negotiate the terms of prostitution liaisons which the Spice House encouraged and oversaw.  The attempt to characterize the dancers is employees is not only belied by the specifics, as testified to by Ms. Long.  It is also undermined by a simple and compelling circumstance – the evidence shows the defendants were running a criminal enterprise!  They could not afford to have a host of "independent contractors" running about.  The defendants had to maintain control on many levels. The only time the defendants relinquished a certain degree of control occurred in response to an investigation conducted by the City of Reno.  However, it is noteworthy that defendant Kamy Keshmiri changed the procedure for "buy outs".  The dancers had nothing to do with implementing the change.  See, Declaration of Kenneth McPartlin, p.2, paragraph 4.  Once the investigation ended, it was back to business as usual.  In short, the very nature of the defendants' continuing criminal enterprise gives the lie to the proposition the defendants did not exercise a very intense level of control over the dancers.

Furthermore, Plaintiffs' will demonstrate throughout this motion that a genuine dispute exists by showing that a rational factfinder, considering the evidence in the light most favorable to the Plaintiffs, could find that Diamond Dolls is an "employer" for the purposes of Title VII in favor of the Plaintiffs.

Therefore, Defendants Motion for Partial Summary Judgment should be denied because they have failed to show that there are no genuine disputes as to any material fact.

## II.   The Court should Deny Defendants' Motion for Partial Summary Judgment because Defendants' have failed to present admissible evidence under FRCP 56(c) sufficient to entitle them to summary judgment.

The party moving for summary judgment bears the initial burden of proof showing an absence of a genuine, material, dispute, and an entitlement to judgment. *Celotex Corp.,* 477 U.S. at 323. "A dispute is 'genuine' if it has a real basis in the evidentiary record." *See Melton*, 841 F.3d at 1219. In a motion for summary judgment a court may only consider admissible evidence. *Orr*, 285 F.3d at 773. Under FRCP 56(c)(4) Furthermore, the nonmoving party does not need to, "produce evidence in a form that would be admissible at trial." *Curnow*, 952 F.2d at 323.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." When setting out facts that would be admissible in evidence, "more is required from an affiant than mere hearsay and legal conclusions." *Doff* 372 F.2d at 804; n1.

In addition to meeting the requirements of FRCP 56(c), documents authenticated through personal knowledge must be attached to an affidavit, where the documents could be admitted into evidence by the affiant. *Id*. at 773-74. A proper foundation to admit the documents into evidence may also be established through Federal Rule of Evidence 901(b) or 902. *Id. See* Fed. R. Evid. 901(b) (enumerating methods with which to authenticate evidence); *See Also* Fed. R. Evid. 902 (describing self-authenticating documents which need no foundation).

FRCP 56(e) enumerates actions that the court may take when a party fails to support an assertion of fact adequate to meet the requirements of FRCP 56(c).

Defendants use 4 exhibits attached to their motion to make a showing that there is an absence of a genuine, material, dispute, and an entitlement to judgment. These exhibits contain the "Declaration of Ashley Carey" (hereinafter "Carey Declaration"). Defendants' Motion, Exh. 1. "Diamond Dolls' Payroll Record" (Hereinafter "Payroll Records"). Defendants' Motion, Exh. 2. "Representative Business Licenses." Defendants' Motion Exh. 3. And a "Representative Agreement" Defendants' Motion Exh. 4. Defendants rely entirely on these exhibits to support their Motion.

**1.   The Court should strike Defendants' Exhibit 1 (Declaration of Ashley Carey) from consideration as inadmissible for failure to adequately support the exhibit as required by FRCP 56(c).**

The party moving for summary judgment bears the initial burden of proof showing an absence of a genuine, material, dispute, and an entitlement to judgment. *Celotex Corp.,* 477 U.S. at 323. "A dispute is 'genuine' if it has a real basis in the evidentiary record." *See Melton*, 841 F.3d at 1219. In a motion for summary judgment a court may only consider admissible evidence. *Orr*, 285 F.3d at 773. Under FRCP 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on [1] personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the affiant or declarant is competent to testify on the matters stated." Personal Knowledge is defined as, "knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." Black's Law Dictionary (11th ed. 2019). When setting out facts that would be admissible in evidence, "more is required from an affiant than mere hearsay and legal conclusions." *Doff*, 372 F.2d at 804, n1.

The Carey Declaration does not contain any statement for which to base her personal knowledge on any of the statements made therein; except for the statement at that she has personal knowledge. Defendants' Motion, Exh. 1 at ¶ 4. Furthermore, Ms. Carey's statement that she has

"personal knowledge" in ¶ 4, appears to only apply to the legal conclusion made in ¶ 4 that Diamond Dolls has, "never employed 15 or more employees for 20 or more weeks from the year 2013 to present" and not to the rest of the document. *Id.*

Ms. Carey only states that she is the Human Resources Manager at Diamond Dolls, LLC. Defendants' Motion, Exh. 1 at ¶ 2.  However, there is no indication in her declaration, or anywhere else in the record, as to how long Ms. Carey has been employed by Diamond Dolls; what her duties as the Human Resources Manager of Diamond Dolls are; or whether her duties as the Human Resources Manager of Diamond Dolls are related enough to any of the facts alleged throughout the Carey Declaration as to give Ms. Carey the requisite personal knowledge of those facts. Furthermore, Ms. Carey does not allege any other facts that support an inference that she has observed or experienced firsthand the facts that she alleges throughout the Carey Declaration. *See* Defendants' Motion, Exh. 1.

Therefore, Defendants' Exhibit 1, the "Declaration of Ashley Carey" should be stricken from consideration as inadmissible by the Court for failure to adequately show that she had "personal knowledge" of the facts therein; and for failure to set out facts as required by FRCP 56(c)(4).

       2.  **<u>The Court should strike Defendants' Exhibit 2 ("Payroll Records") from consideration as inadmissible for failure to adequately support the exhibit as required by FRCP 56(c).</u>**

The party moving for summary judgment bears the initial burden of proof showing an absence of a genuine, material, dispute, and an entitlement to judgment. *Celotex Corp.,* 477 U.S. at 323. "A dispute is 'genuine' if it has a real basis in the evidentiary record." *See Melton*, 841 F.3d at 1219. In a motion for summary judgment a court may only consider admissible evidence. *Orr*, 285 F.3d at 773.

In the Carey Declaration, Ms. Carey states, "I am the Human Resources Manager at Diamond Dolls, LLC dba Spice House. . ." Defendants' Motion, Exh. 1 at ¶ 2. Ms. Carey further states that, "a ***true and correct*** copy of Diamond Dolls' Payroll Record is attached to Diamond

Dolls' Motion…" Defendants' Motion, Exh. 1 at ¶ 3 [Emphasis Added]. However, Ms. Carey does not appear anywhere on the Payroll Records submitted by Defendants, which directly contradicts Ms. Carey's statement that the Payroll Records are "true and correct." Defendants' Motion, Exh. 1 at ¶ 3; *See Also* Defendants' Motion, Exh. 2.

Outside of the Carey Declaration, the only reference to Ms. Carey on the record thus far is Defendants' references to the Carey Declaration attached to their motion. Therefore, it is not unreasonable to infer that Ms. Carey may not have "personal knowledge" of the Payroll Records attached to Defendants' Motion sufficient to authenticate the Payroll Records under FRCP 56(c)(4).

Furthermore, with Ms. Carey's absence from the Payroll Records, the credibility of the Payroll Records, and by extension, The Carey Declaration become heavily suspect. Other than the Carey Declaration, there are no other materials within the record by which the Defendants may authenticate the Payroll Records under FRE 901. Furthermore, the Payroll Records are not within the type of self-authenticating documents contemplated in FRE 902.

Therefore, pursuant to FRCP 56(e), the Court should strike Defendants' Exhibit 2 ("Payroll Records") from consideration as inadmissible for failure to adequately support and authenticate the exhibit as required by FRCP 56(c).

3. **The Court should strike Defendants' Exhibit 4 (Representative copy of the Kashmiri Entertainment Group and Dancer/Entertainer Independent Contractor Agreement with Arbitration and Class Action Waiver Provisions) from consideration as inadmissible for failure to adequately support the exhibit as required by FRCP 56(c).**

The party moving for summary judgment bears the initial burden of proof showing an absence of a genuine, material, dispute, and an entitlement to judgment. *Celotex Corp.,* 477 U.S. at 323. "A dispute is 'genuine' if it has a real basis in the evidentiary record." *See Melton*, 841 F.3d at 1219. In a motion for summary judgment a court may only consider admissible evidence. *Orr*, 285 F.3d at 773.

As stated above Defendants' Exhibit 1 has failed to adequately show that Ms. Carey had "personal knowledge" and failed to set out facts in compliance with the requirements of FRCP 56(c). Because of these deficiencies Defendants have failed to make a showing that Ms. Carey is a person through which Defendants' Exhibit 4, "Representative Copy of the Kashmiri Entertainment Group and Dancer/Entertainer Independent Contractor Agreement with Arbitration and Class Action Waiver Provisions" (hereinafter, "Agreement") could be admitted into evidence. Furthermore, Ms. Carey stated in the Carey Declaration that "a true and correct copy of a Representative Agreements is attached… as "Exhibit 4." Motion, Exh. 1 at ¶ 6. This statement raises two issues as to the Agreement.

Firstly, the term "Representative Agreement" suggests that Defendants' Exhibit 4 is just an example of the type of agreements Diamond Dolls actually enters into with its cabaret dancers. This interpretation of the term "Representative" is further supported by Defendants' Exhibit 3, which is purported to be, "true and correct copies of the Representative Business Licenses." Therefore, Defendants' usage of the term "Representative" can be read as being "an example." Therefore, it is reasonable to infer that the agreements that Diamond Dolls actually enters into with any particular cabaret dancer it hires could be substantially different from the Agreement attached as Defendants' Exhibit 4. Therefore, the Agreement cannot be relied on as being a dispositive showing that Diamond Dolls engages with its cabaret dancers as independent contractors and not employees, and therefore, lacks any probative value.

Secondly, Defendants' Exhibit 4 appears to have 14 pages, however only 13 pages were attached to Defendants' Motion. While a missing page may be insignificant, it does raise substantial questions as to the credibility of Ms. Carey's statement that, "a ***true and correct*** copy of a Representative Agreements is attached… as "Exhibit 4." *Id.* [Emphasis Added]. Furthermore, Defendants' do not allege any facts that indicate that Ms. Carey took part in the signing of any agreements between Diamond Dolls and its dancers and would therefore lack the requisite "personal knowledge" to authenticate the document.

Therefore, pursuant to FRCP 56(e), the Court should strike Defendants' Exhibit 4 (The Agreement) from consideration as inadmissible for failure to adequately support and authenticate the exhibit as required by FRCP 56(c).

Therefore, in conclusion, the Court should Deny Defendants' Motion for Partial Summary Judgment because Defendants' have failed to present admissible evidence under FRCP 56(c) sufficient to make a showing that there is no genuine dispute of any material fact entitling them to summary judgment.

## II. Defendants' Motion for Partial Summary Judgment should be Denied because the Walters "Payroll Method" and Nev. Rev. Stat. 608.0155 provide inadequate legal standards for which Defendants may claim that they are entitled to judgment as a matter of law as required by Fed. R. Civ. P. 56.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". The party moving for summary judgment bears the initial burden of proof showing an absence of a genuine, material, dispute, and an entitlement to judgment. *Celotex Corp.* 477 U.S. at 323. Judgment is appropriate "as a matter of law" when the moving party should prevail. *Anderson.*, 477 U.S. at 248.

Defendants first argue that the "payroll method" used to determine how many employees an employer has in *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 117 S. Ct. 660 (1997) should also be applied in this case. The court in *Walters* states that one, "look ***first*** and primarily to whether the individual in question appears on the employer's payroll" *Id.* at 666 (Emphasis Added). This suggests that the court in *Walters* contemplated scenarios in which the "payroll method" alone would be inadequate. For example, a scenario in which the employee does not appear on the payroll due to misclassification by the employer, or to hide someone from being counted as an employee. Sometimes an expansive factual inquiry is called for.

Furthermore, Title VII is a remedial statute designed to provide a remedy for employees who suffer injustice at the hands of their employers. If an employer could circumvent Title VII by

1   simply not including employees on their payroll, Title VII would be rendered completely
2   ineffective.

3          Due to this reality, when an expansive factual inquiry is needed, The Supreme Court has
4   adopted the common-law test in determining who is an employee when the statute containing the
5   term does not helpfully define it. *Darden*, 503 U.S. at 322-23. Because Title VII defined "employee"
6   in a circular manner and the statute did not suggest something other than common law agency
7   principles should be applied. *Murray*, 613 F.3d at 945. The common-law test contains "no
8   shorthand formula or magic phrase that can be applied to find the answer, … all of the incidents
9   of the relationship must be assessed and weighed with no one factor being decisive." *Darden*, at
10  324; quoting *NLRB,* 390 U.S. at 258.

11         Therefore, Defendants' use of the *Walters* "Payroll Method" test is inadequate to make a
12  showing that Defendants should prevail in this case. Therefore, Defendants' Motion for Partial
13  Summary Judgment should be denied.

14         Defendants further argue that, "Even if the Court looks beyond the payroll, the dancers that
15  perform at the Spice House are independent contractors pursuant to Nevada law." Defendants'
16  Motion, pp. 4. Defendants then refer to Nev. Rev. Stat. 608.0155 (hereinafter "NRS 608.0155").

17         This argument **must** fail because Title VII preempts state law. Title VII is a federal
18  regulatory scheme which requires that its interpretation be federally consistent, and as such, not
19  subject to the whims of the states. Congress did not intend for the states to be able to change the
20  meaning of any Title VII provision by legislating around any federal interpretations. Therefore,
21  Defendants' argument that Plaintiffs' Title VII claims fail pursuant to Nevada law cannot stand.

22         Furthermore, Defendants asserting that Plaintiffs' Title VII claims fail pursuant to Nevada
23  law is incorrect. Defendants', when citing to NRS 608.0155 only provide the Court with a portion
24  of the full statute. *See* Defendants' Motion, pp. 4-5. Defendants' did not include subsections (a) or
25  (b) of NRS 608.0155(1) which read:

26

27  PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

28

1.  Except as otherwise provided in subsection 2, for the purposes of this chapter, a person is conclusively presumed to be an independent contractor if:

(a) Unless the person is a foreign national who is legally present in the United States, the person possesses or has applied for an employer identification number or social security number or has filed an income tax return for a business or earnings from self- employment with the Internal Revenue Service in the previous year;

(b) The person is required by the contract with the principal to hold any necessary state business license or local business license and to maintain any necessary occupational license, insurance or bonding in order to operate in this State; and

(c) The person satisfies three or more of the following criteria:

NRS 608.0155 (1)(a) ends with a semicolon, (1)(b) ends with a semicolon and the word "and." As such, NRS 608.0155 should be read as (1)(a) *and* (1)(b) *and* (1)(c). A common sense reading of the statute also demands this interpretation, as to take any one provision in isolation would create a situation where nearly any person working in the State of Nevada could be misclassified as an independent contractor. This would effectively shield the wily employer from State, Tax, and Title VII liability, which is contrary to social policy as well as Title VII's remedial purpose.

Furthermore, NRS 608.0155(1)(a) provides that, "a person is conclusively presumed to be an independent contractor if . . . [the person] possesses . . . a social security number or has filed an income tax return for a business or earnings from self-employment with the Internal Revenue Service in the previous year."  Defendants have failed to proffer any evidence as to whether this provision has been met by any of Diamond Dolls cabaret dancers, therefore, Defendants' analysis of NRS 608.0155(1)(c) is premature and moot.

Therefore, because Defendants use of the NRS 608.0155 is wholly improper in a federal Title VII claim; and because Defendants have failed to make a showing that Defendants should prevail under the NRS statute if it did apply, Defendants' Motion for Partial summary Judgment should be Denied for failure to make a showing that Defendants should prevail.

**III. Defendants' Motion for Partial Summary Judgment should be Denied for failing to make a showing that they should prevail under the *Darden* test; and because a reasonable *could* return a verdict for the Plaintiffs.**

Pursuant to Fed. R. Civ. P. 56(a), summary judgment shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". The party moving for summary judgment bears the initial burden of proof showing an absence of a genuine, material, dispute, and an entitlement to judgment. *Celotex Corp.*, 477 U.S. at 323. The Rule provides a "relatively lenient standard" to survive the motion and continue to trial -- if with the evidence presented, a reasonable jury *could* return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248 (Emphasis Added). The evidence presented by the movant should also be viewed in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157. Judgment is appropriate "as a matter of law" when the moving party should prevail. *Anderson*, at 248. Even if the moving party's motion for summary judgment is uncontested, or unresponded to, it is not enough. *Edwards*, 482 U.S. at 595; *Torres-Rosad*, 335 F.3d at 9.

The Supreme Court has adopted the common-law test in determining who is an employee when the statute containing the term does not helpfully define it. *Darden*, 503 U.S. at 322-23. Because Title VII defined "employee" in a circular manner and the statute did not suggest something other than common law agency principles should be applied. *Murray*, 613 F.3d at 945. The common-law test contains "no shorthand formula or magic phrase that can be applied to find the answer, … all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Darden*, at 324; quoting *NLRB,* 390 U.S. at 258.

The [*Darden*] test is summarized as follow:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; [1] the source of the instrumentalities and tools; [2] the location of the work; [3] the duration of the relationship between the parties; [4] whether the hiring party has the right to assign additional projects to the hired party; [5] the extent of the hired party's discretion over when and how long to work; [6]

the method of payment; [7] the hired party's role in hiring and paying assistants; [8] whether the work is part of the regular business of the hiring party; [9] whether the hiring party is in business; [10] the provision of employee benefits; [11] and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-324 (internal citations omitted).

The first *Darden* consideration is, "the source of instrumentalities and tools." *Id.* at 323. Defendants contend that the dancers provide all of their own instrumentalities, such as hair tools, makeup, costumes, shoes, props, and music. Defendants' Motion, pp. 6-7. Furthermore, in Defendants' Exhibit 4, Diamond Dolls requires that, "All entertainers . . . hair must be clean and styled. Fingernails and toenails must be neatly groomed and polished. Make-up must already be applied." Defendants' Motion Exh. 4, pp. 12 at § 1. Therefore, these instrumentalities are not something the dancers purchase because it would make them a more competitive independent contractor, but because Diamond Dolls necessitates the need for dancers to purchase such instrumentalities. Furthermore, If the purchase of hair tools, makeup, costumes (work appropriate clothing), and shoes were to weigh in the favor of someone being an independent contractor, then every employee whose employer does not require a uniform, but does require a grooming and appearance standard is that much more at risk of being misclassified as an independent contractor.

Defendants further argue that the business licenses dancers are required to purchase from the City of Reno and State of Nevada are instrumentalities that dancers must provide for themselves. Defendants' Motion, pp. 7. However, dancers are required to have these licenses as a part of a State regulatory scheme. Therefore, these business licenses are simply procedural and carry no more persuasive weight to whether someone is an independent contractor than any other procedural professional state licensing requirement.

Viewed in the light most favorable to the nonmoving party, Defendants' have failed to allege facts that would indicate that the dancers supply their own instrumentalities and tools as to be identifiably different from an employee. Therefore, the first *Darden* consideration cuts in favor of Diamond Dolls' dancers being employees.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 18

The second *Darden* is, "the location of the work." *Darden*, at 323. "The Contractor shall perform these services at the Company's [sic] [Diamond Dolls] in Reno, Nevada." Defendants' Motion, Exh. 4, pp. 5 at § 2.7. "ENTERTAINERS ARE REQUIRED TO COMPLETE THEIR ENTIRE SHIFT UNLESS OTHERWISE ALLOEWED [sic] TO LEAVE WITH MANAGEMENT APPROVAL"; "Adult interactive cabaret performers will remain on the premises of the business for their entire scheduled shift. Adult interactive cabaret performers will only leave the business with the approval of the on-duty manager…" Defendants' Motion, Exh. 4, pp.1; pp. 13 at ¶ 22.

Defendants allege that dancers are free to dance at multiple Adult Interactive Cabarets. Defendants' Motion pp. 6; *See Also* Defendants' Motion, Exh. 1 at ¶ 9. However,

> "the contractor does hereby assign to the Company the total right, title and interest in and to any copyright in any existing or future works or part thereof of whatsoever nature that the Contractor, individually or jointly with any other person(s) has made or created or will make or will create during the course and scope of this agreement and the performing of services by the Contractor for the Company"

Defendants' Motion, Exh. 4 at § 5.2.

Diamond Dolls control over the intellectual property of the dancers would effectively prevent the dancers from dancing at any other Adult Interactive Cabarets without risking Diamond Dolls claiming that the dancer is infringing upon copyright they acquired by nature of the Agreement. The entirety of the confidentiality section of the Agreement would also function to effectively prevent dancers from dancing at any other Adult Interactive Cabarets as well. Defendants' Motion, Exh. 4. pp. 5 – 6, at § 4.

Viewed in the light most favorable to the nonmoving party, Diamond Dolls' dancers are required to work on property owned by Diamond Dolls. Therefore, the second *Darden* consideration cuts considerably in favor of Diamond Dolls' dancers being employees.

The third *Darden* consideration is "the duration of the relationship between the parties." *Darden*, at 323. Defendants have not alleged any facts as to this issue, and Plaintiffs do not have

access to the materials necessary to analyze this issue. However, viewed in the light most favorable to the nonmoving party, the third *Darden* consideration should be considered to cut in favor of Diamond Dolls' dancers being employees.

The fourth *Darden* consideration is "whether the hiring party has the right to assign additional projects to the hired party." *Id.* Ms. Carey states that, "Dancers have full control over the way they will perform their services, including. . . making the ***choice*** to perform on the stage." Defendants' Motion, Exh. 1 at ¶ 7 [Emphasis Added]; *See Also* Defendants' Motion, pp. 5, at Lines 26-28 (In which Defendants claim that dancers can ***choose*** to check in with the DJ and is not required) [Emphasis Added]. However, directly contrary to Defendants' assertion, one of the "House Rules" is that, "***The Front Door Girl will then*** check the Entertainer in with the D.J. ALL Entertainers ***must*** complete the stage rotation set forth by the D.J., A minimum fine of $50.00 will be imposed on those Entertainers who miss their stage." Defendants' Motion, Exh. 4, pp. 12 § 3 [Emphasis Added]. This demonstrates that the front door girl checks the dancers in with the DJ, not the dancers; that the DJ has the power and authority to assign when and where a dancer is allowed to dance, and that the dancers have no choice as to whether they want to be on the stage rotation or not. Choosing not to be on the stage rotation would cause the dancer to forfeit $50.00 every time they would otherwise have been on stage, which is no real choice at all.

Furthermore, according to Julie Ramos' Declaration attached hereto as "**Exhibit 1**", and Kenneth McPartlin' Declaration attached hereto as "**Exhibit 2**",  Diamond Dolls encouraged the practice of allowing patrons to "buy-out" a dancer's shift so that the patron could leave the premises with the dancer, presumably for sex. Exh. 1, pp. 3 at ¶ 8; *See Also* Exh. 2, pp. 2 at ¶ 4.

Furthermore, any dancers fired for engaging in prostitution would be subsequently rehired by Kami Kashmiri further encouraging the behavior. Exh. 2 at ¶ 3. Furthermore, Clifton Kyle Smith, while employed as a DJ for Diamond Dolls would, "arrange liaisons with dancers off of the premises of the Spice Hours." Exh. 1 at ¶ 10. With Diamond Dolls profiting from the "buy-out" and the practice being encouraged and/or arranged by Kami Kashmiri, floor managers, and

Mr. Smith it is reasonable to infer that dancers could consider participating in "buy-outs" as a job requirement. Exh. 1 at ¶ 8; *See Also* Exh. 2 at ¶ 4 and 5. Particularly with the heavily coercive tactics employed here, such as plying girls with alcohol. Exh. 1 at ¶ 6, 7, 10; *See Also* Exh. 2 at ¶ 2.

Therefore, with the DJ's authority to mandate when dancers were to appear on stage, and with "buy-outs" appearing to be so heavily encouraged as to appear that some dancers could reasonably infer that they were a requirement of employment, it would appear that Diamond Dolls regularly assigned extra projects to its dancers.

Viewed in the light most favorable to the nonmoving party, Diamond Dolls has the right to assign additional projects to the dancers. Therefore, the fourth *Darden* consideration cuts in favor of Diamond Dolls' dancers being employees.

The fifth Darden consideration is, "the extent of the hired party's discretion over when and how long to work." *Darden*, 503 U.S. at 323. Defendants contend that the dancers are free to choose when and for how long they wish to work for. Defendants' Motion pp. 5-6; *See Also* Defendants' Motion, Exh. 1, pp. 2 at ¶ 8. However, "ENTERTAINERS ARE REQUIRED TO COMPLETE THEIR ***ENTIRE SHIFT UNLESS OTHERWISE ALLOEWED*** [sic] ***TO LEAVE*** WITH MANAGEMENT APPROVAL"; "Adult interactive cabaret performers will remain on the premises of the business for their ***entire scheduled shift***. Adult interactive cabaret performers will only leave the business with the approval of the on-duty manager…" Defendants' Motion, Exh. 4, pp.1; pp. 13 at ¶ 22 [Emphasis Added]. Therefore, Diamond Dolls dancers do not have discretion over how long their shifts will be, the freedom to come and go as they please (within regulatory compliance), and it appears that Diamond Dolls schedules shifts. Furthermore, the fact that customers could "buy-out" the remainder of a dancers shift, suggests that there is a remainder to "buy-out", which further suggests that dancers do not have discretion over the length of their shifts.

Viewed in the light most favorable to the nonmoving party, Diamond Dolls' dancers do not have discretion over how long they will work, and it appears that Diamond Dolls will schedule

dancers' shifts, removing the dancers' discretion over when to work. Therefore, the fifth *Darden* consideration cuts in favor of Diamond Dolls' dancers being employees.

The sixth *Darden* consideration is "the method of payment." Defendants' argue that, "Diamond Dolls' payroll records do not contain 15 or more employers [sic] for any week out of the years 2016 – present . . . according to Ms. Carey, Diamond Dolls' Human Resources Manager/Accountant, Diamond Dolls as not employed 15 or more employees for any of the years in question, dating back to 2013." Defendants' Motion, pp. 4. (*See* Defendants' Motion, Exh. 2; *See Also* Defendants' Motion, Exh. 1 at ¶ 3). As discussed above, the *Walters* "Payroll Method" can be insufficient in adequately describing the number of employees an employer has. The "Payroll Method" is particularly inapplicable here because the payroll records supplied by Defendants are incomplete, inaccurate, or both.

Furthermore, Ms. Carey does not appear anywhere on the payroll records submitted by Defendants. *See* Defendants' Motion, Exh. 2. Therefore, it is not unreasonable to infer that if Diamond Dolls' Human Resources Manager does not appear on the payroll, then the payroll is deficient of other persons who would count towards the 15 or more employee minimum required by Title VII. Furthermore, since Diamond Dolls' Human Resources Manager does not appear on the payroll, an inference can be made that Diamond Dolls would similarly leave any employee they wish to hide from an employee count off of the payroll as well.

Viewed in the light most favorable to the nonmoving party, the method by which Diamond Dolls dancers are compensated is unclear, and possibly illegitimate. Therefore, the sixth *Darden* consideration cuts in favor of Diamond Dolls' dancers being employees.

The seventh *Darden* consideration is, "the hired party's role in hiring and paying assistants." *Darden*, 503 U.S. at 323-324. Defendants assert that the dancers have the ability to hire "employees" such as hair stylists, makeup artists, choreographers, music producers, stylists, seamstresses, etc. Defendants' Motion, pp. 6. Hiring someone who performs a service for a nondescript number of clients (as the people who work in the professions listed by Defendants

typically do) can hardly be equated to the less-than-arms-length agency relationships observed between an employer and employee, or employer and assistant, as would be required here to conclude that the hired party is an independent contractor.

Furthermore,

> "the contractor does hereby assign to the Company the total right, title and interest in and to any copyright in any existing or future works or part thereof of whatsoever nature that the Contractor, individually or jointly with any other person(s) has made or created or will make or will create during the course and scope of this agreement and the performing of services by the Contractor for the Company"

Defendants' Motion, Exh. 4 pp. 6 at § 5.2.

Therefore, if the dancers were to hire any employees or assistants, Diamond Dolls would be exerting their control over those employees or assistants and the dancers by taking control of any copyrights the employees or assistants have created or will create with the dancer. Diamond Dolls hires dancers to perform and entertain, not to create intellectual property. Furthermore, Diamond Dolls is attempting to influence control over anyone the dancer hires through the copyright clause of the agreement. Therefore, any control Diamond Dolls asserts over the intellectual property of the dancers and anyone the dancer purchases services from is similar to the type of control that an employer asserts over an employee.

Viewed in the light most favorable to the nonmoving party, Diamond Dolls' dancers cannot be said to "hire and pay" employees/assistants. Therefore, the seventh *Darden* consideration cuts in favor of Diamond Dolls' dancers being employees.

The eighth and ninth *Darden* considerations are, "whether the work is part of the regular business of the hiring party; and whether the hiring party is in business." *Darden*, 503 U.S. at 324. Diamond Dolls is an "Adult Interactive Cabaret." Defendants' Motion, Exh. 4, pp. 4. Without the dancers, Diamond Dolls ceases to be an "Adult Interactive Cabaret." Therefore, the work of the dancers is part of the regular business of Diamond Dolls. Furthermore, there is no contention that Diamond Dolls is in business.

Viewed in the light most favorable to the nonmoving party, the work of Diamond Dolls' dancers is part of the regular business of Diamond Dolls, and Diamond Dolls is in business. Therefore, the eighth and ninth *Darden* consideration cuts in favor of Diamond Dolls' dancers being employees.

The tenth and eleventh *Darden* considerations are, "the provision of employee benefits; and the tax treatment of the hired party. *Darden*, 503 U.S. at 324. Defendants contend that they do not provide employee benefits, or "provide any information to the dancers for tax purposes." Defendants' Motion, Exh. 1, pp. 3 at ¶ 14 and 15. However, employers often misclassify employees as independent contractors for the purpose of escaping the legal and tax liabilities contemplated by these considerations. Furthermore, Defendants have not submitted any admissible, probative evidence as to this issue, and Plaintiffs do not have access to any such evidence.

However, viewed in the light most favorable to the nonmoving party, and due to the indications discussed above that Diamond Dolls has likely misclassified their dancers as independent contracts, or failed to submit evidence of Diamond Dolls compensating the dancers, the tenth and eleventh *Darden* consideration should be found to cut in favor of Diamond Dolls' dancers being employees.

Therefore, in the light most favorable to the nonmoving party, under *Darden* Diamond Dolls relationship with its dancers heavily weighs in favor of an employer – employee relationship than it does to an employer – independent contractor relationship.

Furthermore, Defendants rely heavily on the existence of the agreement represented in Defendants' Exhibit 4 as proof that Diamond Dolls and the dancers entered into an independent contractor relationship. However, the existence of an agreement or contract characterizing the hired party as an independent contract does not necessarily make it so. This Court has applied the common-law test despite an agreement characterizing a taxicab driver as a contractor. *Doud*, 96 F.Supp.3d at 1089-1105. The court explained:

> … the fact that a taxicab operator chooses to enter into an arrangement with a driver described as an independent contractor *is not controlling as to whether or not the driver is an independent contractor or employee as that term is used in the ADA*. Instead, this is just one factor *among many* that must be considered in determining the relationship status between the parties under common law principles of agency.

*Id*. at 1088 (ruling intent of the parties did not tip in favor of finding Mr. Doud was either an independent contractor or employee); *see also NLRB* 512 F.3d 1090 (ruling Taxicab drivers who leased cabs from employer were "employees," not independent contractors…) (emphasis added).

Therefore, Defendants' Motion for Partial Summary Judgment should be denied because, by the evidence presented, in the light most favorable to the nonmoving party, Defendants have failed to make a showing that they should prevail, and are entitled to summary judgment.

**IV.** **Pursuant to FRCP 56(d), the Court should not Grant Defendants' Motion for Partial Summary Judgment on the grounds that Plaintiffs have failed to meet their burden under FRCP 56.**

FRCP 56(d) requires that, "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson.*, 477 U.S. at 250 n.5; *See Also Metabolife Int'l*, 264 F.3d at 846. Where no discovery has taken place, the non-movant cannot be expected to adequately support an assertion that a fact is genuinely disputed when the non-movant does not yet have access to evidence which would adequately support that assertion.

In the time between when Plaintiffs filed their Complaint, and Defendants filed their Motion for Partial Summary Judgment, Defendants filed a 12(b) motion to dismiss which is still pending, in which Defendants wholly failed to raise the affirmative defense of not having the requisite number of employees for Title VII to apply. Plaintiffs subsequently filed an Opposition to Defendants' 12(b) motion to dismiss. Defendants have yet to file an answer to the complaint with the court; and no discovery has occurred. As of this time, the evidentiary record is completely lacking in regard to what facts are in dispute or not.

This case is still in the earliest stages of litigation. There has been no discovery; particularly the type of discovery which would produce evidence that would dispositively support or oppose an assertion that Diamond Dolls is not an employer under Title VII.

Therefore, if the Court finds that Plaintiffs have not met their burden under FRCP 56, the Court should grant Plaintiffs with any relief it deems appropriate under FRCP 56(e).

## **CONCLUSION**

**I.** Defendants' Motion for Partial Summary Judgment should be Denied because Defendants have failed to make a showing that there is no genuine dispute as to any material fact.

**II.** Defendants' Exhibits 1, 2, and 4 do not have the proper foundation to be admissible under Fed. R. Civ. P. 56(c). Therefore, the Court may not take into consideration the contents of those exhibits. With the Court unable to consider the contents of those exhibits, Defendants have failed to meet their burden under Fed. R. Civ. P. 56. Therefore, the Court should Deny Defendants' Motion for Partial Summary Judgment.

**III.** Defendants' Motion for Partial Summary Judgment should be Denied because the Walters "Payroll Method" and Nev. Rev. Stat. 608.0155 provide inadequate legal standards for which Defendants may claim that they are entitled to judgment as a matter of law as required by Fed. R. Civ. P. 56.

**IV.** In the event that the Court finds that Plaintiffs have not met their burden under Fed. R. Civ. P. 56, pursuant to Fed. R. Civ. P. 56(d), Plaintiffs move for any such relief available under Fed. R. Civ. P. 56(d) that the Court deems necessary.

DATED this 22nd day of June, 2020.

  /s/ Mark Mausert
Mark Mausert
729 Evans Avenue
Reno, Nevada 89512
(775) 786-5477

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 26

1

## Index of Exhibits

2

Julie Ramos Declaration……………………………………………………………… Exhibit 1

3

Kenneth McPartlin Declaration……………………………………………………… Exhibit 2

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify, under penalty of perjury that I am an employee of Mark Mausert Law Office; I am over the age of eighteen (18) years; I am not a party to, nor hold an interest in this action; and on the date set below, I sent via United States Postal Service mail and electronic service, a true and correct copy of, **PLAINTIFFS' OPPOSITION TO DEFEDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT,** to the addressee(s) listed below:

Anthony Hall
Kendra Jepsen
Simons Hall & Johnston PC
6490 S. McCarran Blvd., Suite F-46
Ren, NV 89509


DATED this 22nd day of June, 2020.

 /s/ Brittaney Martin
Brittaney Martin
Employee of Mark Mausert

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 28