UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHELSEA LONG, JULIE RAMOS,<br><br>                              Plaintiffs,<br><br>  v.<br><br>DIAMOND DOLLS OF NEVADA, LLC,<br>d/b/a SPICE HOUSE, JAMY KESHMIRI,<br>KAMY KESHMIRI,<br><br>                              Defendants. | Case No. 3:19-cv-00652-LRH-CLB<br><br>ORDER |

Defendants Diamond Dolls of Nevada, LLC, Jamy Keshmiri, and Kamy Keshimiri (collectively defendants) have filed a motion to dismiss the second amended complaint of plaintiffs Chelsea Long and Julie Ramos (ECF No. 21) and, alternatively, a motion for partial summary judgment on plaintiffs' first and second claims (ECF No. 37). Moreover, defendants have filed a motion to sever all causes of action; or in the alternative, bifurcate the claims against Clifton Kyle Smith—the other defendant in this case (ECF No. 43). Smith has not joined in on any of these motions. For the reasons stated below, the Court will grant defendants' motion to dismiss in part and deny it in part, deny defendants' motion for partial summary judgment, and grant defendants' motion to sever.

**I. Factual Background and Procedural History**

For the purposes of defendants' motion to dismiss, the factual allegations within plaintiffs' second amended complaint are presumed to be true. The Keshmiri defendants own and operate multiple adult entertainment establishments throughout the Reno, Nevada area; these include bars

1

and cabaret clubs. ECF No. 18 at 5. Long began working at one of these establishments, the Spice House, in May 2015 as a bartender. *Id.* at 4–5. Ramos began working at the Spice House in November 2014 as a waitress and was promoted to assistant manager in December 2017. *Id.* at 5, ECF No. 21-2 at 2. Smith was employed by defendants as a bartender and DJ. ECF No. 18 at 3, 5. Plaintiffs allege that in addition to his duties as a bartender and DJ, Smith was also responsible for "cajoling and convincing" women to engage in prostitution. *Id.* Smith would act as a prostitution "liaison," whereby he would provide women with alcohol and arrange for them to leave the premises with men for the purpose of engaging in sexual activity. *Id.* at 3–4. Smith would also collect the "buy out fee," the defendants' cut of whatever fee a patron paid to the dancer to engage in prostitution. *Id.* at 4. Long has alleged that she personally witnessed Smith "recruit young women to be prostitutes," which included Smith explaining to new dancers the procedure they had to follow if a customer wanted to leave the premises with them. *Id.* at 7. This procedure involved contacting the "floor host," who would negotiate the price with the customer and collect cash or credit payments. *Id.* Although legal in many Nevada counties, prostitution is illegal in Washoe County. Washoe County, Nev., WASHOE COUNTY CODE 50.238-50.242 (1995).

According to Ramos, she complained to management several times about Smith sexually harassing her. ECF No. 18 at 5, 7. Such sexual harassment included Smith propositioning her to give him her underwear and offering to buy her underwear to model for him. *Id.* at 7–8. Ramos alleges that management "trivialized" her complaints, with one of the general managers, David Hoffman, allegedly characterizing Smith as a "flirt." *Id.* at 7–8. In "June or July of 2018," Long alleges that while she was sleeping in a VIP room, Smith pulled down her pants and underwear without her consent and began to masturbate over her. *Id.* at 5. Long reported Smith's conduct to defendants, who in turn fired Smith. *Id.* at 8. Smith was still permitted to frequent the Spice House as a customer following his termination; Long states that when he would return, she was "compelled" to serve him. *Id.*

Defendants rehired Smith "approximately four or five months" after he was fired. ECF No. 18 at 10. Long, who had informed Ramos of Smith's actions, states that she was continually "forced" to serve Smith drinks when he would drink at the bar following his shift. *Id.* Both Ramos

2

and Long allege that they were "fearful" of Smith's presence at Spice House because of their past negative experiences with him. *Id*. On March 15, 2019, Long states that she served a female acquaintance a large amount of alcohol. *Id*. She witnessed her acquaintance, who had been accompanied to Spice House by her husband, exit the women's bathroom shortly after Smith. *Id*. Long's acquaintance told her that she had intercourse with Smith in the women's restroom; Long, knowing that her acquaintance was heavily intoxicated, believed that she had been raped because she could not legally give consent in her intoxicated state. *Id*. at 10–11. Later that night, Long alleges that she overheard Smith denying raping the acquaintance, to which Hoffman responded that he had "[Smith's] back." *Id*. When Long confronted Hoffman about the incident later that night, he purportedly told her that he did not believe the acquaintance and that he planned to tell the police that he was in the women's bathroom with the acquaintance and Smith. *Id*. at 11.

Ramos and Long scheduled a meeting with Jamy Keshmiri to discuss the events of March 15. ECF No. 18 at 11. Upon learning of the existence of the meeting, Hoffman allegedly fired Ramos and Long via text message. *Id*. On March 20, Ramos and Long attended a meeting with Hoffman and Jamy Keshmiri. *Id*. at 11–12. At the meeting, Keshmiri allegedly "harshly criticized" them and threatened to terminate their employment by closing Spice House. *Id*. That same day, Ramos and Long both resigned from their positions. *Id*. at 12. On May 24, Hoffman sent Long a text message wherein he "threatened to press charges" against her because she had filed an initial complaint with the Nevada Equal Rights Commission ("NERC"). *Id*. at 13. Ramos learned of the text message from Long, and sometime thereafter, several employees of Spice House visited Ramos's place of work "apparently for the purpose of dissuading her" from cooperating with Long's NERC complaint. *Id*.

Long received a right to sue letter from the Equal Employment Opportunity Commission (EEOC) on October 2, 2019, and Ramos received her right to sue letter on December 2, 2019. ECF No. 18 at 1–2. This action was filed on October 28, 2019, with the second amended complaint (the operative complaint) being filed on January 30, 2020. The second amended complaint added Ramos as a plaintiff, and it is the subject of defendants' motion to dismiss and motion for partial summary judgment now pending before the Court.

## II. Legal Standard

### A. Motions to Dismiss

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2)'s notice pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; a pleading, however, that offers " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 667. Even so, "bare assertions. . .amount[ing] to nothing more than a formulaic recitation of the elements of a. . .claim. . .are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681.) "In sum, for a complaint to survive

a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

### B. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the non-moving party. *See id*. at 252.

///

**C. Motion to Sever**

Rule 20(a) of the Federal Rules of Civil Procedure ("FRCP") permits joinder of defendants in one action if: (A) plaintiffs assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) there are common questions of law or fact. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

If this test is not satisfied, the court has the discretion to sever parties so long as no substantial right will be prejudiced by the severance. *Id.* (citations omitted). In addition, the court should consider judicial economy when evaluating whether to sever misjoined parties. 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 1683, at 385 (1986).

**III. Discussion**

In their motion to dismiss, defendants request dismissal of all seven of plaintiffs' causes of action: (1) Title VII sexual harassment; (2) Title VII retaliation; (3) negligent hiring; (4) negligent retention; (5) negligent supervision; (6) intentional infliction of emotional distress, and (7) battery, assault, and false imprisonment through a theory of ratification. ECF No. 18. In their motion for partial summary judgment, defendants request judgment only on plaintiffs' Title VII causes of action. ECF No. 37. In their motion to sever, defendants request to sever all causes of action brought against Smith. The Court will address these arguments in turn.

**A. Motion to Dismiss the Second Amended Complaint (ECF no. 21)**

<u>1. Title VII Sexual Harassment</u>

Among other things, Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of...sex." *Nichols v. Azteca Restaurant Enterprises, Inc.,* 256 F.3d 864, 871 (9th Cir. 2001); 42 U.S.C. § 2000e–2(a)(1). Plaintiffs have alleged that defendants fostered a sexually hostile work environment through the hiring and continued employment of Smith. Sexual harassment in the form of a hostile work environment constitutes sex discrimination. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). To prevail on this type of sexual harassment claim, plaintiffs must demonstrate a "pattern of ongoing and persistent harassment severe enough to alter

the conditions" of their employment. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998). The workplace must be both objectively and subjectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Additionally, "even if a hostile working environment exists, an employer is only liable for failing to remedy harassment of which it knows or should know about." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995).

Defendants argue that both Ramos's and Long's claims are untimely because they filed their discrimination complaints with NERC outside the 300-day window. ECF No. 21 at 8. Nevada law requires that claims of employment discrimination must be filed "not later than 300 days after the occurrence of the alleged practice." NEV. REV. STAT. 233.160(1)(b). Defendants argue that because the incident Ramos complained of occurred in January 2015, her NERC complaint filed on August 15, 2019, was well-outside the 300-day window. ECF No. 21 at 8. As for Long, while she does not remember the exact date of her incident with Smith, she knows that it occurred on a Saturday in June 2018. Defendants assert that even if the incident occurred on the last Saturday of June 2018, her NERC complaint filed on June 11, 2019, is still outside the 300-day window. *Id*. Plaintiffs respond by arguing that their Title VII sexual harassment claim is premised on a hostile work environment created by defendants' continued employment of Smith and his exploits. ECF No. 23 at 3. Specifically, they point to the fact that Smith was rehired within several months after being fired in June 2018, and during his second stint, allegedly raped a customer in a bathroom. *Id*. at 3–5. Under plaintiffs' theory, the continued presence of Smith, who they accuse of being a sexual predator, at the Spice House created a perpetually hostile work environment. *Id*. at 3.

Upon a review of plaintiffs' complaint, the Court finds that they have alleged sufficient facts to plead a prima facie case of Title VII sexual harassment. The Court rejects defendants' arguments that the claims of Ramos and Long are untimely. Plaintiffs' NERC complaints were not solely premised on isolated incidents of harassment by Smith. Rather, they were premised in part on defendants rehiring Smith shortly after his termination for allegedly engaging in sexual misconduct and Smith's continued presence at the Spice House, which ultimately culminated in

Smith allegedly raping a female patron, Hoffman and Jamy Keshmiri threatening plaintiffs with discharge and harshly criticizing them for complaining about Smith. ECF Nos. 21-2 at 3–4; 21-3 at 3. In *Ellison v. Brady*, the court noted that in some cases, the "mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment." 924 F.2d 872, 883 (9th Cir. 1991). In such cases, it is necessary to know "whether the mere presence of a harasser would create a hostile environment from the perspective of a reasonable woman." *Id*. Plaintiffs have alleged sufficient facts demonstrating that they were subjectively fearful of Smith's presence. ECF No. 18 at 8–9. And based on Smith's alleged conduct in June 2018, March 2019, and discharge threats by management, it is plausible for a jury to find that the Spice House created a sexually hostile working environment.

Contrary to defendants' assertion that a failure to dismiss would "create a perpetual statute of limitations for every case in which an employer does not fire the alleged harasser" (ECF No. 26 at 5), the *Ellison* court noted that the "mere presence" doctrine was limited to scenarios where the harasser's conduct was "severe or pervasive" *and* the employer failed to take appropriate measures to remedy the situation. 924 F.2d at 883. In *Ellison*, the employer transferred the alleged harasser to another office but then transferred him back six months later. *Id*. Like here, there was insufficient evidence of how often the plaintiff and alleged harasser would have to interact following his transfer back or whether the employer's conduct was reasonably calculated to end the harassment. *Id*. Both factors will need to be addressed through discovery. Dismissal will be denied on this basis.

As an alternative argument, defendants argue that the Court should at least dismiss plaintiffs' sexual harassment claim against the Keshmiri defendants because Title VII does not allow for individual liability for violations. ECF No. 21 at 6–7. In *Miller v. Maxwell's Intern. Inc.*, the Ninth Circuit held that individual employees are not liable for Title VII violations, noting that the "statutory scheme…indicates that Congress did not intend to impose individual liability on employees." 991 F.2d 583, 587 (9th Cir. 1993). In response, plaintiffs argue that Diamond Dolls is the alter ego of the Keshmiri defendants which acts to deny them any individual liability immunity under Title VII. ECF No. 23 at 7–9.

The protections envisioned in *Miller* apply to the Keshmiri defendants. *Miller* makes clear that agents of an employer—including those in supervisory or ownership positions—are immune from suit under Title VII. 991 F.2d at 587.[1] Moreover, at this juncture, plaintiffs have not offered any authority or sufficient facts for their proposition that the alter ego doctrine allows for recovery against individual agents in Title VII actions.

The Court will accordingly deny defendants' motion to dismiss plaintiffs' second cause of action for unlawful retaliation under Title VII against Diamond Dolls. As to the Keshmiri defendants, until the Court is provided with authorities which indicate individual liability is proper under Title VII, it will be dismissed without prejudice.

## 2. Title VII Retaliation

Defendants next request dismissal of plaintiffs' second claim, unlawful retaliation under Title VII. In addition to prohibiting discrimination on the basis of sex, Title VII also prohibits employers from discriminating against their employees for opposing "any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a prima facie case of unlawful retaliation, a plaintiff must show that she: (1) engaged in a protected activity, (2) suffered an adverse employment decision, and (3) there was a causal link between her activity and the employment decision. *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002).

Defendants first argue that plaintiffs have not pleaded the existence of a protected activity because their internal complaints to Hoffman and the Keshmiris do not qualify as such under Title VII. ECF No. 21 at 9. They essentially argue that complaints regarding conduct involving employees and not employers are generally not actionable under Title VII. *Id*. While defendants are correct regarding the law, they misread plaintiffs' complaint. Plaintiffs have alleged that they complained of the sexually hostile working environment caused by Smith's continued presence

---

[1] Courts outside the Ninth Circuit have found it may be appropriate to impose individual liability on an individual in some instances. Specifically, where an undercapitalized corporate entity could not fulfill a judgment despite the associated individual owner's ability to do so. *See Archer v. Globe Motorists Supply Co.*, 833 F. Supp. 211 (S.D.N.Y. 1993) (recognizing the possibility of individual liability for supervisors in actions under Title VII, where the corporation which employs the supervisor is undercapitalized).

and employment at the Spice House, which included his, Hoffman's, and Jamy Keshmiri's alleged actions in March 2019. ECF No. 18 at 10–12. The decision to rehire Smith following his termination rested with defendants.

Next, defendants argue that plaintiffs did not suffer any adverse employment action because of their complaint. ECF No. 21 at 10. The term "adverse employment decision" is not limited to just "cognizable employment actions such as discharge, transfer, or demotion." *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997). Instead, it encompasses actions such as "underserved performance ratings," the denial of raises, and the handing of more burdensome work responsibilities. *Kortan v. California Youth Authority*, 217 F.3d 1104, 1113 (9th Cir. 2000). Plaintiffs recognize that they were not directly retaliated against following their complaint; instead, they assert that they were constructively discharged. ECF No. 23 at 9. Under the constructive discharge doctrine, an employee's decision to resign because of "unendurable working conditions" is the same as a formal discharge for remedial purposes. *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). A determination of constructive discharge is ordinarily a question of fact left to the trier of fact—"did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Id*. (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004). Stated with more detail:

> constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

*Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (quoting *Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022 (1994)).

Plaintiffs have alleged sufficient facts to support a claim of constructive discharge. While there is a high bar to meet when basing an adverse employment action off a theory of constructive discharge, that bar has been met here. *See Poland*, 494 F.3d at 1184. Taking plaintiffs' allegations as true, Jamy Keshmiri "harshly criticized" the plaintiffs and threatened to close the Spice House after plaintiffs objected to Smith's conduct and his continued presence at their place of employment. ECF No. 18 at 11–12. As previously noted, it is alleged Smith sexually harassed

Ramos, sexually battered Long, and raped a patron of the strip club, and then had his conduct ignored by management. ECF No. 18 at 5–11. A trier of fact could arguably find that the continued presence of an alleged sexual offender—in conjunction with Hoffman's conduct and Jamy Keshmiri's harsh criticisms—would lead "a reasonable person in [Long's or Ramos'] position [to] have felt compelled to resign." *Poland*, 494 F.3d at 1184 (quotation omitted).

The Court will accordingly deny defendants' motion to dismiss regarding unlawful retaliation under Title VII against Diamond Dolls. For the reasons stated in the previous section regarding individual liability, it will be dismissed against the Keshmiri defendants without prejudice.

### 3. Negligence

Next, defendants request that the Court dismiss plaintiffs' third cause of action for negligent hiring, training, and supervision. ECF No. 21 at 13. As an initial matter, plaintiffs agree with defendants that there is no cause of action for negligence based upon a theory that defendants owed plaintiffs a duty to protect them from a sexually hostile work environment. ECF No. 23 at 14. The Court will therefore limit its discussion to plaintiff's various negligence claims against defendants as they relate to alleged specific incidents of sexual assault and harassment.

To succeed on a claim for negligent hiring, training, supervision, and/or retention under Nevada law, a plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, training, and/or supervising an employee even though defendant knew or should have known of the employee's dangerous propensities; (3) the breach caused the plaintiff's injuries; and (4) damages. *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). The statute of limitations for negligence claims such as these in Nevada is two years prior to the filing of the complaint, meaning that Long may only premise her negligence claims on conduct that occurred after October 27, 2017. NEV. REV. STAT. 11.190(4)(e). Defendants first argue that they did not owe a common law duty to Long to protect her or any other employee from sexual harassment. ECF No. 21 at 15. Even if they did owe Long such a duty, they continue, there was no breach because "Long does not allege any sexual harassment from Smith prior to June 2018 or subsequent" to his 2018 rehiring. *Id*. at 16.

Employers have a general duty to conduct reasonable background checks on potential employees to ensure that they are fit for the position. *Hall*, 930 P.2d at 99. (citing *Burnett v. C.B.A. Security Service*, 820 P.2d 750, 752 (Nev. 1991)). A breach occurs when an employer hires an employee even though the employer knew or should have known of that employee's dangerous propensities. *Id*. While defendants are correct that they did not owe Long a duty to provide her a sexual harassment free environment, it does not change the fact that Diamond Dolls did owe Long a duty to conduct reasonable background checks on potential employees. *Hall*, 930 P.2d at 99.

As for any potential breach of this duty, there are two incidents involving Smith that could give rise to defendants' liability—one in June 2018 and one in March 2019. Plaintiffs have alleged that as far back as December 2014, Ramos complained to management that Smith was sexually harassing her, but management did not take her complaints seriously. ECF No. 18 at 5, 7–8. The second amended complaint is replete with allegations that defendants employed Smith in part so that he could coordinate dancers engaging in acts of prostitution with customers. *Id*. at 6–7. But it is unclear how that even if all plaintiffs' allegations are true, such knowledge of Smith's activities would place them on notice that he had a propensity to assault female coworkers. As such, without more, Long has not pleaded a viable claim of negligence as to the June 2018 incident because unforeseeable intentional torts or crimes are superseding intervening causes that generally preclude negligence liability. *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 725 (Nev. 2009). But when defendants rehired Smith sometime in late 2018, they knew that he had sexually abused Long in June 2018. Based on the allegations in plaintiffs' complaint, while it is unknown if defendants were unaware of Smith's character prior to June 2018, they certainly knew of it following the assault incident. Accordingly, defendants cannot claim that Smith's alleged criminal conduct in March 2019 per se shields them from any claim of negligent hiring or retention. *Anderson v. Mandalay Corp.*, 358 P.3d 242, 248 (Nev. 2015) ("an unlawful act will not supersede causation if it was foreseeable").

Where Long's negligence related claims fail, however, is with the third and fourth elements of her negligence claims. Aside from the March 2019 incident, plaintiffs do not allege any specific instances of harassment with Smith other than general concerns that his continued presence at the

Spice House contributed to a hostile work environment which, as conceded by plaintiffs, is not actionable under common law negligence. Long has not pleaded facts that could lead a reasonable finder of fact to conclude that she suffered a cognizable injury because of Smith allegedly raping a female patron in the bathroom. She only notes that she was "offended" by a conversation she overheard between Smith and Hoffman wherein Hoffman promised that he would support Smith. ECF No. 18 at 11. Long has not alleged that she witnessed the incident or was otherwise personally affected by it other than taking offense. It is axiomatic that a cognizable injury is a prerequisite to any claim of negligence. *Havas v. Engebregson*, 633 P.2d 682, 683 (Nev. 1981).

The Court will accordingly dismiss plaintiffs' negligence-based claims without prejudice.

### 4. Intentional Infliction of Emotional Distress

Related to their negligence-based claims, plaintiffs have also pleaded a cause of action for outrage, otherwise known as intentional infliction of emotional distress ("IIED"). To establish a cause of action for [IIED], the plaintiff must show: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation. *Burns v. Mayer*, 175 F.Supp.2d 1259, 1268 (D. Nev. 2001). A plaintiff must set forth "objectively verifiable indicia" to establish that she suffered extreme or severe emotional distress. *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). Nevada has adopted a "sliding scale" approach: the less extreme the outrage, the more evidence of physical injury or illness the plaintiff must present to satisfy the distress requirement and vice versa. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983). Like negligence causes of action, the statute of limitations for all IIED claims is two years. NEV. REV. STAT. 11.190(4)(e).

As with plaintiffs' negligence claims, any basis for IIED must have occurred two years prior to the filing of plaintiffs' complaint— no earlier than October 27, 2017. And like with plaintiffs' negligence claims, they cannot premise a claim of IIED based on allegations that defendants fostered a sexually hostile working environment as remedies for that type of conduct are brought exclusively through Title VII. Once again, this leaves two separate actionable instances—the rehiring of Smith in December 2018 and defendants' response to Smith's conduct

in March 2019. Even assuming plaintiffs have pleaded sufficient facts demonstrating that defendants' conduct was extreme or outrageous, they have not alleged that they suffered extreme emotional distress as a result of the conduct. As noted in the previous section, the only facts plaintiffs have alleged regarding injuries is that Long was "offended" by the conversation between Hoffman and Smith. ECF No. 18 at 11.

### 5. Battery, Assault, and False Imprisonment

Plaintiff Long has pleaded causes of action for battery, assault, and false imprisonment against the defendants based on Smith's alleged conduct. As a threshold matter, Plaintiff Long must prove that defendants ratified Smith's tortious conduct. Both parties correctly observe that, "[a] principal may become liable for the tortious acts of its agent, if the principal, with full knowledge of the tortious conduct, ratifies that conduct, and if the conduct was 'purportedly done on the principal's behalf.'" *Peterson v. Miranda*, 57 F.Supp.3d 1271, 1280 (D. Nev. 2014) (quoting *Harrah v. Specialty Shops*, 221 P.2d 398, 399 (1950)). Even more, for an employer to be liable for intentional torts of an employee—as pleaded here—then the "[intentional] tort must occur within the scope of the task assigned to the employee." *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1180 (Nev. 1996).

Despite Long's pleadings, no facts alleged indicate that Smith committed the intentional torts on behalf of defendants, that defendants ratified such conduct, or that Smith's intentional torts occurred within the scope of an assigned task. Specifically, Smith's alleged sexual assault—which forms the basis of these claims—was not connected to the defendants' business operation. Long has not pleaded facts that could lead a reasonable finder of fact to conclude that defendants condoned or permitted Smith to sexually assault her. Instead, Long largely relies on a conclusory assertion that the alleged sexual assault was part of defendants' larger criminal enterprise. ECF No. 23 at 21. That bare assertion alone does not indicate defendants ratified Smith's conduct based on the employer-employee relationship at issue here.

The Court will accordingly dismiss plaintiff Long's battery, assault, and false imprisonment claims with prejudice.

///

**B. Defendants' Motion for Partial Summary Judgment (ECF No. 37)**

Defendants move for summary judgment on the basis that dancers at Diamond Dolls are independent contractors and thus not subject to Title VII.

Title VII covers employers with fifteen or more employees. 42 U.S.C. § 2000e(b). This requirement is intended to insulate small businesses from Title VII liability. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006). In determining whether an employer has fifteen employees, courts must not include independent contractors. *See Id.* § 2000e(f) ("The term 'employee' means an individual employed by an employer…"); *Murray v. Principal Financial Group, Inc.*, 613 F.3d 943, 945 (9th Cir. 2010) ("[Plaintiff] is entitled to the protections of Title VII only if she is an employee.") (citations omitted). Whether an individual is an independent contractor, or an employee is determined by "the hiring party's right to control the manner and means by which the product is accomplished." *Murray*, 613 F.3d at 945; *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992).[2] The Supreme Court has identified the following factors relevant to this fact-based inquiry:

> (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party.

*Darden*, 503 U.S. at 323–24.

The common law test contains "'no shorthand formula or magic phrase that can be applied to find the answer, …all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id.* at 1349 (quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254,

---

[2] Both parties have identified various tests this Court should use to determine whether an individual is an independent contractor or an employee under Title VII. *See e.g.*, *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997) ("payroll method"); Nev. Rev. Stat. § 608.0155 (2015) (state statutory scheme); *Lutcher v. Musicians Union Local 47*, 633 F.2d 880 (9th Cir. 1980) ("economic realities" test). However, because Title VII—a federal statute that defines "employee" as "any individual employed by an employer"—forms the basis of this action, common law agency principles govern. *Darden*, 503 U.S. at 323 (finding that when a federal statute provides a circular definition of "employee", courts should ascribe to common law agency doctrines).

258 (1968)). Notably, "the common law agency approach is essentially indistinguishable from the [economic realities test] previously used by [the Ninth] Circuit in analyzing 'employment relationship' for Title VII purposes." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1294 n.3 (9th Cir. 1999) (quoting *Loomis Cabinet Co v. Occupational Safety & Health Review Comm'n*, 20 F.3d 938, 941 (9th Cir. 1994)). As an indication of the similarities, the Nevada Supreme Court utilized the economic realities test in *Terry v. Sapphire Gentlemen's Club* to determine that semi-nude dancers at a night club were employees for purposes of minimum wage requirements. 226 P.3d 951 (Nev. 2014). Many of the factors used in *Terry*, are comparable to the factors contained in the *Darden* test—including the special skill required, discretion of the individual surrounding their work, as well as whether the work can be characterized as the regular business of the hiring party.

So here, considering the factors in *Darden*, triable issues of fact exist regarding whether the dancers at Diamond Dolls are employees or independent contractors. Both parties have presented evidence for more than one factor which may lead reasonable minds to reach differing conclusions. For example, defendants argue that Diamond Dolls does not require the dancers to operate the bar. ECF No. 56 at 13. However, plaintiffs point out that Diamond Dolls is an "Adult Interactive Cabaret," and without the dancers, the business would likely cease to exist or be more akin to a sports bar or nightclub. ECF No. 47 at 23. Defendants business revenue is clearly related and arguably dependent upon the nude entertainment which defendants provide.

Accordingly, because the Court finds that there are genuine issues of material fact, the Court will deny the defendants motion for summary judgment.

### C. Defendants' Motion to Sever (ECF No. 43)

The first requirement in Rule 20(a) is to test whether the claims arise from a "series of transactions or occurrences." *See Dougherty v. Mieczkowski*, 661 F.Supp. 267, 278 (D. De. 1987) ("The rule endows the Court with considerable flexibility to consider the parameters of each claim to determine whether the goal of judicial economy can be reconciled with the need to protect [parties] from prejudice.") If a series exists, then the court decides whether the claims share a common question of law or fact before conducting a single trial. *Id.*

///

As discussed *supra*, only plaintiffs' Title VII claims against Diamond Dolls remain. Notably, the claims for relief under Title VII—sexual harassment and retaliation—were not brought against Smith. Nevertheless, plaintiffs contend that "Smith's conduct, and presence, were the primary components of the sexual hostility plaintiffs experienced. He is integral to the case and common issue of fact and law predominate." ECF No. 48 at 20. Under plaintiffs' theory, Smith is a necessary component to the case at hand because his alleged intentional torts were part of a series that gave rise to the Title VII claims. This argument fails.

First, there are no common questions of law between the claims. Title VII addresses employer conduct, not employee conduct. 42 U.S.C. § 2000e–2(a)(1) The substantive law surrounding Title VII does not overlap with the elements of the intentional torts alleged here.

Second, the facts that give rise to the Title VII claims, are not the same facts that give rise to the intentional torts. The Title VII claims concern Smith's rehiring and continued, hostile presence at Diamond Dolls and management's actions against plaintiffs arising from Smith's conduct. The intentional torts largely concern the alleged sexual assault against Long. While the alleged sexual assault served to foster aspects of a hostile work environment, plaintiffs concede that Smith is not a necessary party to prove a hostile work environment or retaliation under Title VII. ECF No. 48 at 20 ("Nor have plaintiffs contended Smith is a necessary party.")

In sum, because plaintiffs' have failed to allege a common question of fact or law between the Title VII claims and Smiths' intentional torts, defendants' motion to sever is granted.

///
///
///
///
///
///
///
///
///

### IV. Conclusion

IT IS THEREFORE ORDERED that defendants' motion to dismiss (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment (ECF No. 37) is **DENIED.**

IT IS FURTHER ORDERED that defendants' motion to sever (ECF No. 43) is **GRANTED**.

IT IS SO ORDERED.

DATED this 29th day of October 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE